WILLIAM GILLEN ET AL. V. ANDREW RILEY ET AL.

[FILED JULY 11, 1889.]

1. **Account Stated:** SALE OF LIQUORS: EVIDENCE. In an action by R. and D. against G. and J., on an account stated, which account consisted of five bills of goods sold and delivered, amounting in the aggregate to $568.40, the defendants answered, first, by a general denial, and second, "for a counter-claim that the amount claimed to be due of the account set out by plaintiffs is for intoxicating liquors sold by plaintiffs to defendants between the 20th of October, 1883, and July 13, 1885; that on and between said dates plaintiffs sold to defendants intoxicating liquors to the amount of $2,453.58, and that all the other goods sold during said period by plaintiffs to defendants amounted to only $150; and said defendants have, on and between December 19, 1883, and March 13, 1886, paid to plaintiffs various sums of money, amounting in all to $1,710.63, which was paid for intoxicating liquors, except $150, and that all the time between and including the said dates plaintiffs were engaged in the business of wholesale dealers in malt, spirituous, and vinous liquors, in the city of Omaha, Nebraska, without having taken out a license for such sales," etc. *Held,* that such answer amounted

to a plea of confession and avoidance, and rendered proof of their account or of the statement thereof by the plaintiffs unnecessary; and upon proof by the defendants of the matter pleaded in avoidance would amount to a full defense.

2. **Liquors:** SALE. A liquor dealer must have a license from the city or county in which his store is kept. With such license he may send out agents and take orders in any part of the state, for goods to be selected and forwarded from the stock kept in such store, and is not required to obtain a license from the authorities of each city or county in which contracts are made therefor by such agent. (*Haug v. Gillett,* 14 Kan., 140.)

3. ———: ———: EVIDENCE. The defendants having pleaded in avoidance of the action that the intoxicating liquors, for which in part the action was brought, were sold by the plaintiffs without first having obtained license therefor, it was incumbent upon them to prove *prima facie* that, at the time of such sales *pro tanto*, the plaintiffs were without such license; an instruction to that effect, *held*, properly given.

4. ———: ———: INSTRUCTIONS. The third paragraph of instructions, given by the court on its own motion, and the first and third instructions asked by the defendants, and refused by the court, examined and *held*, properly given and refused.

5. **Instructions.** An instruction or a series of instructions headed "Instructions given by the court on its own motion," and so placed in the record as to be clearly separate and distinguishable from the instructions presented by the parties, *held*, a sufficient compliance with the terms of the act of February 25, 1875.

ERROR to the district court for Dixon county. Tried below before POWERS, J.

*W. E. Gantt,* for plaintiff in error, cited: *Auzerais v. Naglee,* 15 Pac. Rep., 371, 372; *Volkening v. De Graaf,* 81 N. Y., 268, 270; *Webber v. Howe,* 24 Am. Rep., 590; *Dillon v. Allen,* 26 Id., 145; *Woods v. Armstrong,* 25 Id., 671; *Delahaye v. Heitkemper,* 16 Neb., 476; *Schermerhorn v. Talman,* 14 N. Y., 93; *Bateman v. Robinson,* 12 Neb., 508.

*Barnes Brothers,* for defendant in error, cited: Greenleaf on Evidence, vol. 1, secs. 74, 80, 81; *State v. Cooper,*

28 Cent. Law Journal, p. 94; 1 Benjamin on Sales, p. 321, and cases cited; *Haug v. Gillett*, 14 Kan., 140; *Gill v. Kauffman*, 16 Id., 35; *Boothby v. Plaisted*, 51 N. H., 436.

Cobb, J.

This cause comes to this court on error from the judgment of the district court of Dixon county.

The plaintiffs below allege that an account was stated with the defendants on May 10, 1886, on which there was due $2,084.95, which the defendants agreed to pay; and that there was paid on the account $1,516.55, and there is still due $568.40, with interest at seven per cent from May 1, 1886, which the defendants have failed to pay though requested; and prayer for judgment.

The defendants below answered : denied that an account was stated, or that they are indebted to plaintiffs as alleged; and for a counter-claim set up that the amount due on the plaintiffs' account is for intoxicating liquors sold by plaintiffs to defendants between October 20, 1883, and July 13, 1885; that between said dates plaintiffs sold to defendants intoxicating liquors, amounting to $2,458.51; that all other goods, for the same period, sold by plaintiffs to defendants amounted only to $150; that defendants have, between December 19, 1883, and March 13, 1886, paid to plaintiffs various sums, on account, amounting to $1,710.63, for intoxicating liquors only, excepting $150, for other goods. That for the whole time, including said dates, plaintiffs were engaged in the business of wholesale dealers in malt, spirituous, and vinous liquors, in Omaha, without being licensed as required by the provisions of chapter fifty, Compiled Statutes of Nebraska, relating to the sale of liquor; and all of such sales by plaintiffs to defendants were in violation of law, of which, at the times of purchase, defendants had no knowledge; with prayer

Gillen v. Riley.

for judgment that the account be declared void, the action dismissed, and the defendants recover for the sum of $1,560.63, the amount paid for the intoxicating liquors as stated.

The plaintiffs replied denying each and every allegation, except that as to the accounts being for the sale of intoxicating liquors, and specifically denying that such sale was without license, as set up.

There was a trial to a jury with findings and verdict for the plaintiffs. The defendants' motion for a new trial was overruled and judgment entered on the verdict for $568.40.

The plaintiffs in error present the following grounds for review:

1. The verdict is not maintained by sufficient evidence.

2. The verdict is contrary to law.

3. For errors at law occurring at the trial.

4. In refusing to give the first, second, and third instructions asked by the defendants.

5. In giving, on its own motion, instructions Nos. 1, 2, 3, 4, 5, and 6.

6. In reading to the jury the instructions given, when the same were not marked given.

Under the first error assigned the counsel argue that there was not sufficient evidence of an account stated. In his deposition the plaintiff below, Thomas A. Dillon, replying to the seventeenth interrogatory, to state when any statement of this account had been presented to the defendants, answered, that there had been several statements; at one time they claimed that they got their books mixed up, and he rendered them an itemized statement, in order to help them out, and get their books straightened up.

Q. State whether or not they have made any objections to the account.

A. Not to my knowledge.

Q. [The account was here shown to the witness.] State whether that is a correct statement of the account, and

whether the amount there is the true amount which is due and owing?

A. That is a correct statement of the amount due us at the present time.

The witness here refers to Exhibit A, attached to his deposition, as follows:

OMAHA, September 29, 1887.

Messrs. JONES & GILLEN, Ponca, Neb.,

In account with RILEY & DILLON.,

Wholesale Liquors and Cigars, 1309 Douglas Street.

| 1885. | | Dr. | |
|---|---|---|---|
| April 4. | To balance........................................ | $  34 | 60 |
| May 11. | To merchandise.............................. | 74 | 75 |
| May 15. | To merchandise.............................. | 405 | 30 |
| July 11. | To merchandise.............................. | 47 | 75 |
| July 13. | To merchandise.............................. | 10 | 00 |
| | | $568 | 40 |

If the case depended upon this evidence alone, I should doubt that there was sufficient proof of an account stated. The witness does not state that this identical account was stated or rendered to the defendants, and, as rendered and as here set out, was acquiesced in by them, as a true statement of accounts between them; but by reference to the answer of defendants it will be seen that the claim of plaintiffs is substantially confessed by defendants, and an attempt made to avoid it by the plea that the account consists in great part of charges for spirituous liquors, and that the plaintiffs, at the time of selling such liquors to defendants, were not licensed to sell intoxicating liquors. So much of the answer as is necessary to show the defense is here inserted.

"Defendants, for a counter-claim, allege that the amount claimed to be due, of the account set out by plaintiffs, is for intoxicating liquors sold by plaintiffs to defendants between the 20th of October, 1883, and the 13th of July 1885; that on and between said dates plaintiffs sold to defendants intoxicating liquors to the amount of $2,458.58,

and that all the other goods sold during said period by plaintiffs to defendants amounted to only $150; and said defendants have, on and between the 19th of December, 1883, and the 13th of March, 1886, paid to plaintiffs various sums of money, amounting in all to $1,710.63, which was paid for intoxicating liquors, except $150, as will appear from a statement of said sales and credits attached to and made a part of this answer.

"That all the time between and including said dates plaintiffs were engaged in the business of wholesale dealers in malt, spirituous, and vinous liquors, in the city of Omaha, Nebraska, without having taken out a license for such sales, as required by chapter 50, Compiled Statutes, relating to Liquor. And all of the sales made by plaintiffs to defendants were in violation of law, and at the time of purchasing said liquors these defendants had no knowledge that said plaintiffs were acting in violation of law."

From this plea it appears that within the times therein stated the plaintiffs sold to defendants intoxicating liquors amounting to $2,458.58, and of other articles of merchandise $150, and that upon the whole amount of goods so sold the defendants paid them the sum of $1,710.63, leaving a balance due to the plaintiffs of $897.95. This plea is substantially, if not technically, the ancient plea of confession and avoidance, and amounts to a complete defense, if the matter pleaded in avoidance constitutes a defense in law, and is satisfactorily proven.

Here it may be proper to state that the defendant F. H. Jones, when on the stand as a witness for defendants, in his examination in chief was by the counsel for defendants asked : Was there ever a stated account made between you and them, and answered, " that there was, that they sent up a statement."

It appears from the evidence, is admitted by both parties and not denied by either, as a matter of fact, that, during the time involved in the controversy, the plaintiffs were

engaged in the business of wholesale dealers in liquors and cigars in Omaha, and that the defendants were engaged as retail dealers in intoxicating liquors and cigars in Ponca, Dixon county.

Defendants, in the brief, make two contentions : *First*— That the liquors being in part, if not altogether, sold to them by sample, at their place of business in Ponca, through the plaintiffs' traveling agent, where the plaintiffs confessedly had no license to sell intoxicating liquors, they cannot recover therefor. *Second*—That even if the liquors were, in point of law, sold at the wholesale storehouse of plaintiffs in Omaha, they had no license to sell intoxicating liquors there, and, under the law, cannot recover therefor.

The evidence of plaintiffs, in addition to that already given, consisted in the statement that the witness, the deponent, T. A. Dillon, was a resident of Omaha ; that he was a member of the firm of Riley & Dillon, plaintiffs ; that he knew the defendants Jones & Gillen, of Ponca, Nebraska ; that plaintiffs were engaged, at Omaha, in the business of wholesale dealers in liquor and cigars ; that they had dealings with defendants in the fall of 1883, and up to the spring and summer of 1885 ; that they sold the liquor and cigars during the years 1884 and 1885 ; that on April 4, 1885, there was a balance due plaintiffs from defendants on account of such dealings, the sum of $34.60, which was still due and a part of the bill sued upon ; that on May 11, 1885, the plaintiffs sold to defendants certain merchandise, amounting to the sum of $70.75 ; and on May 15, 1885, merchandise to the amount of $405.30 ; and on July 11, 1885, $47.75; and July 13, 1885, $10.00 ; that said goods were all delivered to and received by them ; that the prices charged were the reasonable market prices for such articles, and were the prices agreed upon between them and the salesman of the plaintiffs ; that the amount due and unpaid for the goods at the date of the deposition was $568.40, and interest ; that said sales were made upon a

credit of four months, and, according to the terms of sale, plaintiffs were entitled to interest after four months.

On cross-examination the witness stated that the balance due April 4, 1885, was for. cigars and mineral waters solely ; that the invoice of May 11, 1885, was for cigars $20, and liquors $50.75 ; that the invoice of May 15, 1885, was for liquors, $405.30 ; and that of July 11 and 13, 1885, was for liquors, $57.75; making a total amount for liquors, $513.80 ; and for cigars and mineral waters, $54.60.

On the part of defendants, F. H. Jones testified that he was the leading member of the firm of defendants; that they had dealings with the plaintiffs in liquors and cigars ; that their business with them was generally conducted here at Ponca; that there were two bills bought from Mr. Riley here in town—that it was all bought here in town ; that in making these purchases they dealt either with Riley & Dillon, or their agent.

On cross-examination he testified as follows :

Question by plaintiffs' attorney: I suppose these parties came here and, either by themselves, or their agents, solicited orders, didn't they, as all wholesale houses do ?

A. They did.

Q. And you gave them orders for the goods, and they were shipped to you from the city of Omaha, here?

A. Yes, sir.

Counsel for the plaintiffs here admitted that the plaintiffs had no license to wholesale liquors in the county of Dixon, but that their license was to sell in the city of Omaha.

On the trial the defendants asked the court to charge the jury as follows : " That if they are satisfied from the evidence that the sales of liquor, on which this action was based, were made in Dixon county, then, under the admissions of plaintiffs, that they had no license for the sale of liquors in said county, their verdict should be in favor of defendants for the liquors so sold," which was refused.

The question raised by the plaintiffs in error came before

the supreme court of Kansas under the liquor law of that state, existing before the law prohibiting the manufacture and sale of intoxicating liquors there, the provisions of which were substantially the same as that of this state ; and, first, in the case of *Haug v. Gillett*, 14 Kan., 140, cited by counsel for defendants in error.

In the opinion, by Mr. Justice Brewer, the court, with clearness and perspicacity, construes the law as condensed in the syllabus from which I quote: " A liquor dealer must have a license from the city or county in which his store is kept.   With such license he may send out agents and take orders in any part of the state for goods to be selected and forwarded from the stock kept in such store, and is not required to obtain a license from the authorities of each city or county in which contracts are made therefor by such agents."

This case was followed in the same court by those of *Williams v. Feinman*, Id., 288, and *Gill v. Kaufman*, 16 Id., 571.   The same question was taken to the supreme court of New Hampshire and decided in the same way, in the case of *Boothby v. Plaisted*, 51 N. H., 436, also cited by the defendants in error.

The instruction requested and not given was therefore inapplicable to the law and evidence of this case, and was rightfully refused.

Under the head of " Error in refusing to give instructions asked by defendants," counsel raise the question of the legality of the plaintiffs' license, as shown by the depositions of John Rush and J. B. Southard.   In these depositions Rush testified that he was city treasurer of Omaha, and custodian of the records of the city and treasurer's office; that he had examined the record with reference to the payment of license of the firm of Riley & Dillon, for 1885; that the records show that the firm paid to the city treasury for liquor license for the year 1885, January 12, 1885, $250; April 1, 1885, $1,000; that the last sum was

in one payment. On cross-examination the witness testified, in reply, as follows:

Q. State whether the money for liquor license has been paid to you by the party receiving it, and if so, whether they paid the full amount at the time of or before issuing the same, or in installments.

A. There is no question as to the party actually paying the money, but we note in a book the name of the payor and the amount, and date. It is customary to pay only *one-fourth* of the year's license, but the party has the option of paying the whole $1,000 at the time if he chooses.

J. B. Southard testified that he resided in Omaha and was city clerk, and had been such since April 20, 1885; that he had custody of the city records; that he knew the plaintiffs; that the firm of Riley & Dillon, during 1885, procured from the city of Omaha license to sell liquors; that the bond and application bears no filing date, the date of the treasurer's receipt for $1,000 being March 28, 1885, the bond itself being approved on April 11, 1885; that the license took effect April 11, 1885, and would be in operation up to April 10, 1886, at midnight. That under the provisions of the city ordinance, No. 483, of Omaha, adopted in 1881, it is optional with all liquor dealers to pay by installments, either quarterly or yearly, in advance, as they may elect. They cannot pay less than one-fourth, $250. The plaintiffs, however, on March 28, 1885, paid the full amount, $1,000.

There was also introduced in evidence and attached to the bill of particulars a copy of ordinance 483, by defendants, entitled "An ordinance to regulate the license and sale of malt, spirituous, and vinous liquors in the city of Omaha, approved October 10, 1881 "; of which ordinance section eight provides: "That the applicant for such license shall, upon filing his application, petition, and bond, pay to the city treasurer the amount required for such license tax at the rate of one thousand dollars ($1,000) per

annum, taking the receipt of the city treasurer therefor, which receipt shall be filed with the city clerk, where it shall remain if such license shall be finally issued; if license to the applicant be refused, then such receipt shall be returned to the applicant, and the money by him paid to the city treasurer shall be refunded upon the surrender of such receipt." The defendants also introduced in evidence a calendar of the days of the week and months for the years 1885 and 1886. Section three of said ordinance provides "that no license shall be issued for any time beyond the municipal year, being the first Monday after the first Tuesday in April following the date of the license." According to the calendar introduced, the first Tuesday of April, 1885, was the 7th and the Monday following was the 13th of the month.

The second instruction by the court, on its own motion, is as follows:

"If you find from the evidence that the goods for which the indebtedness was incurred were intoxicating liquors sold to defendants by plaintiffs in the state of Nebraska, then plaintiffs could not recover for the same unless at the time of making such sales they had a license therefor; and under the issues in this case it devolves upon the defendants to affirmatively show that plaintiffs did not hold such license at the time."

The evidence quoted was introduced on the part of the defendants for the purpose of bringing their case, at the trial, within the rule of the court's instruction; and at the same time they make the point that the instruction itself was error.

We must hold that the evidence fails to show affirmatively that the plaintiffs were not licensed to sell intoxicating liquors during the municipal year of 1885; and without elaborating the argument, I am of the opinion that the want of license by plaintiffs having been pleaded affirmatively by defendants, not only as a defense to the action,

but also in support of their counter-claim, it was incumbent on them to prove, at least *prima facie*, that the plaintiffs sold the liquors sued for without first having obtained license as dealers therein.

Plaintiffs in error also complain of the giving by the court of the third paragraph of instructions, on its own motion, as follows:

"If you find that said sales of liquor were made in the city of Omaha, and at the time the plaintiffs had paid into the city treasury the sum of $1,000, and had their bond therefor on file and approved with the clerk of said city, and a license thereupon issued to them by the authorities of said city for the year 1885, then your verdict should be for the plaintiffs, although such license may have been dated April 11, 1885, and two days before the commencement of the municipal year of 1885."

Were this a direct proceeding on the part of the proper authority against the plaintiffs for the purpose of setting aside and annulling their license, I should be of the opinion that this instruction was erroneous; but upon a collateral issue by a party who has purchased of the licensees, who have sold in good faith, and especially as there is no evidence tending to prove that the plaintiffs were without a license issued within the municipal year in which the liquors were sold, I am of the opinion that there is no reversible error in the charge.

Plaintiffs in error also complain of the refusal of the court to give the first and third instructions presented by them, as follows:

"1. The jury are instructed that under the evidence it has been shown that all of the amount except $54.60 is for intoxicating liquors furnished by the plaintiffs to the defendants; that under the evidence it has been shown that plaintiffs were carrying on the business of dealers in liquors in Omaha without first having obtained a license in the manner required by law therefor, and this being

the case, they cannot recover from defendants for liquors so sold.

"3. That a person who has purchased and paid for liquors sold him in violation of law can, in an action brought against him for a balance due, set up as a counter-claim and recover in said action any moneys paid by him to the person who has made said sales."

There was clearly no error in refusing to give the first instruction. It asks the court to charge the jury "that under the evidence it has been shown that plaintiffs were carrying on the business of dealers in liquors without first having obtained a license in the manner provided by law, while, as before stated, the evidence did not even tend to show such fact. My only objection to the third instruction is, that it is inapplicable to the facts as shown by the evidence, which, as before stated, do not tend to prove that the liquors were sold by the plaintiffs to defendants in violation of law.

The sixth exception assigned, and argued by counsel, is that the court erred in reading to the jury the instructions given, on its own motion, when the same were not marked *"given,"* as required by law. Next preceding these instructions in the record is the following: "Gentlemen of the jury: You are instructed by the court as follows:" and on the margin is stated, "Instructions of the court; defendants except, for the reason the same was not marked and signed by the court before the same was read to the jury."

At common law it was the practice, after a cause had been argued by counsel on both sides, for the judge to charge the jury orally, explaining the nature of the action, and of the defense, and the issues to be decided between the parties, recapitulating the evidence which had been produced in support of either party, remarking upon it when deemed judicious, or desirable, and instructing the jury on all questions of law arising upon the evidence before them (Sackett's Instructions to Juries, p. 8.)

The legislature of this state, in 1873, enacted: "It shall be the duty of the judges of the several district courts, in all cases, both civil and criminal, to reduce their charge or instructions to the jury to writing, before giving the same to the jury, unless the so giving of the same is waived by the counsel in the case in open court, and so entered in the record of said case; and any charge or portions of a charge or instructions given to the jury by the court and not reduced to writing as aforesaid shall be error in the trial of the case, and sufficient cause for the reversal of the judgment rendered therein." Approved February 18, 1883.

This became section 58 of chapter 14 of the General Statutes of 1873. The legislature of 1875 amended the section by an act for that purpose, entitled "An act to amend section 58," etc, approved February 25, 1875, the third section of which provides: "The court must read over all the instructions which it intends to give, and none others, to the jury, and must announce them as given, and shall announce as refused, without reading to the jury, all those which are refused, and must write the words 'given' or 'refused,' as the case may be, on the margin of each instruction."

This first act modifying the common law practice, and adding to the considerable labor of the judges of *nisi prius* courts, was by no means considered as popular with them; and in some districts of this state there were complaints that written instructions, requested by counsel of either party to the cause, sometimes found their way into the record without the proper remarks to show whether they were given by the court or refused. This mischief was sought to be remedied by the amendatory act of February 25, 1875; and for that purpose the last named act was necessary so far as the instructions presented by counsel to the court were affected, but was not necessary if applied to instructions which show upon their face that they are given by the court on its own motion, it being the sole and only

object of the amendatory section, quoted, that the record should show whether a given instruction set forth had been given to the jury as an instruction, or had been withheld from them by the court. A construction of its language which fully answered that end and purpose, and which upholds the due and orderly proceedings of such courts, is what, in my judgment, is required at the hands of a court of review, and answers all the purposes of the statute.

I am, therefore, of the opinion that the introductory words of the instruction given by the court on its own motion, as set forth, answer all the requirements of the statute, and that a construction of the law which would vitiate such instruction for the want of the word "given" written on the margin, would be unnecessarily technical and hypercritical.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.