GEORGE WAGNER, APPELLANT, V. WILLIAM BREED ET AL., APPELLEES.

[FILED JULY 1, 1890.]

1. **Construction:** THE INSTRUMENT IN WRITING, set out in the opinion, *held*, not to establish the relations of principal and agent between the parties thereto, nor is it a bill of sale, nor do its terms tend to give character to or localize the sales of beer afterwards made by the appellant to appellee B.

2. **Liquors:** SALE: LEX LOCI. Evidence examined, and *held*, to establish the sales of beer by appellant to appellee in the state or Illinois, but not in the state of Nebraska.

3. ———: ———: INTERSTATE COMMERCE. A sale of beer by the car load, by W., in the state of Illinois, to B., of Nebraska, to be shipped to the latter state, is not a violation by W. of the law of the public policy of the state of Nebraska.

4. **Mortgage:** FUTURE ADVANCES. The limitation of the amount to be advanced by W. to B., as stated in the written instrument, set out in the opinion, *held*, to limit the amount of W.'s lien as against subsequent mortgagees, but not as against B.

5. **Counter-claim:** EVIDENCE offered by B., in support of his counter-claim, examined, and *held*, insufficient for that purpose.

APPEAL from the district court for Adams county. Heard below before GASLIN, J.

*J. B. Cessna* (*J. M. Ragan,* and *W. P. McCreary,* of counsel), for appellant, cited, on the contention that the contract with reference to the sale of beer was not against public policy: *Hill v. Spear,* 9 Am. Rep., 205; *Shuenfeldt v. Junkerman,* 20 Fed. Rep., 357; *Tracy v. Talmage,* 14 N. Y., 162; *Feineman v. Sachs,* 7 Pac. Rep. [Kan.], 222; *Bowman Distilling Co. v. Nutt,* 10 Id., 163; *Abberger v. Marrin,* 102 Mass., 70; *Boothby v. Plaisted,* 12 Am. Rep., 140; *Fegler v. Shipman,* 11 Id., 118; *Taylor v. Pickett,* 3 N. W. Rep. [Ia.], 514; *Second Nat. Bank v. Curren,* 36 Ia., 555; *Whitelock v. Workman,* 15 Id., 357; *Gross v. Scarr,* 33 N. W. Rep., 223; *Gaylord v. Soragen,* 32 Vt., 110; *Bowman v. R. Co.,* 8 Sup. Ct. Rep., 689; *Brown v. Md.,* 12 Wheat. [U. S.], 419; *Brown v. Huston,* 5 Sup. Ct. Rep., 1091; *Welton v. Mo.,* 91 U. S., 275; *Robbins v. Taxing Dist.,* 7 Sup. Ct. Rep., 593.

*C. H. Tanner,* for appellees Breed, cited, in reply to the contention: *Clark v. R. Co.,* 5 Neb, 314; *Kittle v. DeLamater,* 3 Id., 325: *Delhaye v. Heitkemper,* 16 Id., 475; Bishop, Contracts, secs. 470–88; Hare, Contracts, p. 654; *Flersheim v. Cary,* 17 Pac. Rep., 825 [S. C., 39 Kan., 178]; *Korman v. Henry,* 32 Kan., 49; 1 Chitty, Contracts [Am. Ed.], 130, 132, 133; *Gillen v. Riley,* 27 Neb., 158.

*Dilworth, Smith & Dilworth,* for appellees Browning et al., cited: Jones, Mortgages, secs. 366–7, and cases.

COBB, CH. J.

· This cause comes to this court on appeal from the district court of Adams county. In that court the plaintiff filed his petition alleging that on the 10th day of July,

1885, the plaintiff, on the one part, and the defendants William Breed and Mary Breed, on the other part, entered into a contract, a copy of which is there set out, by which it was agreed that plaintiff was to sell and furnish the said William Breed with all the beer which he, the said William Breed, could sell in southern Nebraska, and by a mortgage executed and delivered by the said William Breed and Mary Breed to the said George Wagner, at the same time (and which was, in fact, the same paper) the said William and Mary Breed, parties of the first part, for the purpose of securing to said party of the second part any indebtedness that was or might be thereafter created by the parties of the first part to the party of the second part, by virtue of the sale of beer to the said William Breed, as therein afterwards more fully set out, did bargain, sell, and convey unto the party of the second part, his heirs and assigns, the following described real estate, situate in the county of Adams, and state of Nebraska, to-wit: Lot ten, in block ten of Moore's addition to the town (now city) of Hastings. That said conveyance was to be void, however, if the said parties of the first part should, when the parties to the said contract should cease to operate thereunder, pay, or cause to be paid to the said party of the second part, all debts that might be due him from parties of the first part.

That said mortgage was signed by William Breed and Mary Breed at Hastings, Nebraska; was sent and delivered to said George Wagner, at Rock Island, Illinois, where it was signed by him July 10, 1885, and was recorded August 1, 1885, in the records of Adams county, Nebraska; that under and by virtue of said mortgage, or agreement, said plaintiff did sell, furnish, and deliver to the said William Breed, one of said defendants, a large quantity of beer, which was on credit and not paid for by the said William Breed, to-wit, the sum of $3,549.81, which was due and unpaid May 14 and 15, 1887, for beer

sold by the plaintiff to the said William Breed at Rock Island, Illinois, under and by virtue of said contract of June 10, 1885; that said contract remained in full force and effect until February 13, 1888, when, by mutual consent, the furnishing of beer ceased; that at all times from January 1, 1887, to the end of said business and up to the present time, the said William Breed was indebted to the said plaintiff for beer furnished under said mortgage to the amount varying from three thousand and sixty-seven dollars to four thousand dollars; that in evidence of said indebtedness the said William Breed and Mary Breed gave to plaintiff their two notes, the first dated June 2, 1887, for two thousand dollars, signed by William and Mary Breed, and the other February 13, 1888, for $1,404.76, signed William Breed; that the said William and Mary Breed, nor either of them, have ever paid said plaintiff their said notes, the debt, or debts, due by virtue of the contract aforesaid, or any part thereof, as required by the conditions thereof, whereby said mortgage deed has become absolute.

That on the 2d day of June, 1887, and February 13, 1888, the said plaintiff and defendants made full settlement of accounts stated between them of claims and indebtedness, and as evidence of said indebtedness and accounts stated between said plaintiff and defendants which was secured by said mortgage the said William and Mary Breed gave to plaintiff the two notes aforesaid. That the said defendants Newell Browning, Oscar E. Woods, Charles Morse, Charles F. Parmele, and Oliver & Boston have, or claim to have, some interest in said mortgaged premises, but their claims are subsequent and inferior to plaintiffs. That no proceedings at law have ever been had or commenced for the recovery of said debt, or any part thereof, nor has any part thereof ever been paid or collected. With prayer that the said defendants be foreclosed of all equity of redemption or other interest in said mortgaged premises;

that plaintiff may be declared to have the first lien and
said mortgaged premises may be sold according to law,
and out of the proceeds thereof the plaintiff may be paid
the amount adjudged to be due thereon, with interest at
eight per cent per annum, and costs of suit; that said de-
fendants might be adjudged to pay any deficiency that
might remain after applying the proceeds of said sale to
the payment of said debt, and for general relief.

The defendants William and Mary Breed filed their
answer, in which they admitted the execution, delivery,
and recording of the contract, as shown by exhibit "A"
of plaintiff's petition. They also admitted the execution
and delivery of the two promissory notes, marked exhibit
" B " and " C," and attached to plaintiff's petition. They
further alleged as a defense to the said petition that, under
the contract before mentioned, said William Breed and
Mary Breed were indebted to the plaintiff herein on ac-
count of $1,404.76, which was fully paid and satisfied by
the said William Breed by his executing and delivering a
negotiable promissory note, as appears by exhibit " C " of
plaintiff's petition, and that the said William and Mary
Breed, nor either of them, are indebted to the said plaintiff
in any sum or sums of money whatever which is secured
under and by virtue of the said contract, but are indebted,
if at all, to said plaintiff in two promissory notes, set forth
in plaintiff's petition, which are unsecured by said contract,
and were given in full satisfaction of the credit obtained
thereby, which notes are absolutely null and void and can-
not be collected for the reason that the consideration there-
for arose out of a transaction contrary to public policy and
the law in this, to-wit, the consideration therefor was
for the sale by the plaintiff to the defendant of malt
liquors, to-wit, beer, in the county of Adams and state of
Nebraska, without the plaintiff's first having procured a
license therefor as required by section 1, chapter 50, of the
Compiled Statutes.

For a further answer the said defendants say that the plaintiff at the commencement of this action, and for a long time prior thereto, was and still is indebted to defendants in the sum of $2,836.84, the same being damages sustained by reason of the plaintiff herein causing to be shipped to the defendant William Breed worthless and spoiled beer, which was of no value and unfit for use, by reason of which defendant William Breed's business, as a vendor of beer, to be furnished under said contract, was absolutely ruined and he compelled to abandon the same, to his damage in the sum of $2,500; that defendant Mary Breed was and is the wife of defendant William Breed, and defendants deny each and every other allegation in plaintiff's petition contained, and defendants pray an accounting with the said plaintiff, and that they may have judgment against the plaintiff for the sum of $1,787.03, with interest thereon from the 13th day of July, 1888, with costs.

The plaintiff replied, denying each and every allegation contained therein, and for a further reply the plaintiff alleged that the statute of Nebraska (1887) set up in defendants' answer, in so far as it attempts to prevent and make void sales, if any, by plaintiff to defendant, of beer imported from Illinois and made in unbroken packages on arrival at Hastings, Nebraska, is unconstitutional and void, as an interference with interstate commerce. (Article 1, section 8, of the constitution of the United States.)

There was a trial to the court, a jury being waived, with a finding by the court "upon the issues and the evidence for the defendants William Breed and Mary Breed and against the said plaintiff, and that the notes sued on in said plaintiff's petition were and are absolutely void, for the reason that the consideration therefor arose out of a transaction contrary to the public policy and the laws of this state;" the judgment was "that the cause be dismissed as to the claim of the plaintiff against the defendants William and Mary Breed; that defendants William and Mary Breed

should go from thence without day as to the claims of said plaintiff as set forth in his petition," with their costs, etc.

The answer of the defendant Charles F. Parmele set up an indebtedness to him on the part of the defendant William Breed on the 14th day of May, 1887, of the sum of $1,671.45, and the execution and delivery on that day by said Breed to him, the said Parmele, of his two promissory notes of said date, by one of which he promised to pay to said Parmele, or order, on July 1, 1887, the sum of $671.-45, with interest at ten per cent after maturity, and by the other of which said Breed promised to pay said Parmele, or order, on August 1, 1887, the sum of $1,000, with interest at the same rate after maturity; and that at the same time, for the purpose of securing the payment of said promissory notes, the said William Breed made and delivered to said Parmele his deed of mortgage, conveying to him lots 10 and 11, block 10, in Moore's addition to Hastings, with the appurtenances, conditioned upon the payment of the said promissory notes, which said mortgage was duly executed and acknowledged as well by the said William Breed as by the said Mary Breed, his wife, and duly recorded in said county of Adams on the said 14th day of May, 1887; that said notes are due and unpaid, and said mortgage a first lien upon said premises. Defendant denies all of the allegations in said plaintiff's petition not in his said answer admitted, with prayer for foreclosure and sale, etc.

The answer of the defendant Newell Browning denied every allegation of said petition not expressly admitted, and for a further answer he alleged that on the 15th day of February, 1887, the defendant William Breed became indebted to him, the said Browning, in the sum of $450 for a house placed upon the premises described in plaintiff's petition, said $450 being part of the purchase price of said house, and as evidence of such indebtedness then and there executed and delivered to the said Browning his two certain promissory notes, by one of which he promised on

July 15, 1887, to pay to the order of Newell Browning $200, with ten per cent interest after date, and by the other he promised on November 1, 1887, to pay to the order of Newell Browning $250, with interest at ten per cent from date; and to secure the payment of said notes the said William Breed and Mary Breed, his wife, executed and delivered to the said Newell Browning a mortgage upon lot 10, in block 10 of Moore's addition to Hastings, which mortgage was duly recorded in the said county of Adams on the 15th day of February, 1887; that the whole amount of said sum is now due and unpaid; with prayer for foreclosure and sale, etc.

The defendants Oscar E. Woods and Charles Morse nor either of them made answer, and default was regularly entered as to each of them.

It appears from the record that on the 7th day of December, 1888, and before the trial, between the plaintiff and the principal defendants, the cause was brought on and tried upon the answers and cross-petitions of the defendant Newell Browning, the defendant Charles F. Parmelee and the defendants Oliver & Boston, and it was found that there was due the defendant Newell Browning from the defendant William Breed upon the promissory notes set forth in the answer of the defendant Newell Browning the sum of $530.60 which bears interest at ten per cent, etc., with all additional findings necessary to a foreclosure and sale; that there was due the defendant Charles F. Parmelee from the defendant William Breed upon the promissory notes set forth in the answer and cross-petition the sum of $1,900.75 which draws interest at ten per cent, with the additional findings necessary to a decree of foreclosure and sale; that there was due the defendants Oliver & Boston from the defendant William Breed for the lumber and materials furnished, as set forth in the answer and cross-petition of the said defendants Oliver & Boston, the sum of $13.10, which draws interest at ten per cent, with

the additional necessary findings to a foreclosure sale; with several judgments of forclosure and sale for the several amounts found as above in favor of the above named defendants and cross-petitioners.

No answer or cross-petition of the defendants Oliver & Boston appear in the record.

The cause was brought to this court by the plaintiff upon appeal. Upon the trial the plaintiff introduced in evidence the instruments relied on as a mortgage, which I here copy:

### "CONTRACT AND MORTGAGE.

" This agreement, made and entered into this the 10th day of July, A. D. 1885, by and between William Breed and Mary Breed, his wife, as parties of the first part, and George Wagner, of the city of Rock Island, in the state of Ilinois, as party of the second part, witnesseth:

" The party of the second part does hereby constitute and appoint William Breed, one of the parties of the first part, sole and exclusive agent to sell the beer of party of the second part in all the territory south of the Union Pacific railroad, and west of the cities of Lincoln and Columbus, in the state of Nebraska. And said party of the second part hereby promises and agrees that he will not, during the continuance of this contract, sell any beer to any person in said territory other than William Breed, and said party of the second part hereby promises and agrees that he will at all times furnish the said William Breed with all the beer he may require for sale, and the party of the second part agrees to give credit to the said William Breed, from time to time, to the amount of fifteen hundred ($1,500) dollars.

" In consideration of the agreements and promises of the party of the second part hereinbefore set out, said party of the first part hereby agrees to faithfully represent party of the second part in the territory above mentioned, and to act as his agent for the sale of his beer, and at all times use his

utmost endeavor to sell the same in the markets of said territory, and he, the said party of the first part, for the purpose of securing to the said party of the second part any indebtedness that is now or may be hereafter created by parties of the first part to party of the second part, hereby bargains, sells, and conveys unto the party of the second part, his heirs and assigns, the following described real estate situated in the county of Adams, state of Nebraska, to-wit: Lot 10, in block 10, in Moore's addition to the town (now city) of Hastings. This conveyance to be void, however, if the said parties of the first part shall, when the parties to this contract shall cease to operate thereunder, pay or cause to be paid to party of the second part all debts that may be due him from parties of the first part for beer furnished parties of the first part by parties of the second part. This contract may be annulled by either party thereto, by giving the other party six months' notice in writing.

"Witness the hands of said parties this the 10th day of July, A. D. 1885.　　　　　　　WILLIAM BREED.

"MARY BREED.

"GEORGE WAGNER.

"Attest: J. M. RAGAN.

"STATE OF NEBRASKA, }
　"ADAMS COUNTY.　　} ss.

"Be it remembered, that on this the 10th day of July, A. D. 1885, before me, John M. Ragan, a notary public within and for said county, personally appeared Wm. Breed and Mary Breed, his wife, to me personally known to be the identical persons who executed the foregoing mortgage and contract, and they acknowledged the execution of the same to be their voluntary act and deed.

"In witness whereof, I have set my hand and notarial seal this 10th day of July, A. D. 1885.

"[SEAL.]　　　　　　JOHN M. RAGAN,

"Notary Public."

Also the notes set out in the petition.

"HASTINGS, NEBRASKA, June 2, 1887.

"One year after date we promise to pay to the order of George Wagner, two thousand dollars, at eight per cent, value received.                    WM. BREED.

"Due June 2, 1888, Hastings.          MARY BREED."

"HASTINGS, NEBRASKA, Feb'y 13, 1888.

"Four months after date we promise to pay George Wagner, or order, fourteen hundred and four dollars and seventy six cents, with interest from date at eight per cent per annum, for value received. This note is given for beer furnished by the payee to us under contract dated July 10, 1885, and secured by a deed of that date to lot ten (10), in block ten (10), in Moore's addition to the city of Hastings, in Adams county, Nebraska, and recorded in recorder's office of said county August 1, 1885, in book 28 of Mortgages, at page 22 thereof. It is agreed that should suit be commenced for the collection of this note, ten per cent shall be allowed as attorney's fee, to be paid with the note and taxed with the costs in this case.

"WM. BREED."

There was also evidence introduced by the plaintiff upon the trial, in depositions taken upon notice and duly certified, tending to prove the general course of business in the sale and shipping of beer by the car load by the plaintiff at and from his brewery at Rock Island, in the state of Illinois, to the defendant Wm. Breed, at Hastings, in the state of Nebraska, from about the 10th day of July, 1885, up to about the 14th day of May, 1887, and showing a balance of indebtedness from William Breed to the plaintiff for and on account of such beer sold and shipped as aforesaid of $3.470.12. The necessity or even the relevancy of this evidence is scarcely discernible under the pleadings in the case, unless it might be deemed necessary to rebut, on the part of the plaintiff, the allegations and

evidence of the defendants, the Breeds, as to damages to them caused by the breaking up and ruining of the business of William Breed by reason of the plaintiff's causing worthless and spoiled beer to be shipped to the said William Breed.

The contract, or paper, whatever it may properly be called, when all its parts and provisions are considered and construed together, cannot be held to establish the legal relationship of principal and agent between the plaintiff and the defendant William Breed. Its purpose and object is twofold: First, to establish a trade on credit between the parties, and second, to provide a security for whatever indebtedness might arise on the part of Breed to the plaintiff out of such trade, within the limits therein specified. The trade thus provided for was a monopoly by Breed of the product of plaintiff's brewery within the territory specified, and this was agreed to by both parties. The third clause of the instrument taken alone would probably be construed to amount to an agreement on the part of Breed to sell beer in the name of the plaintiff and at his risk of profit or loss; but when considered in connection with the second clause, wherein the plaintiff agrees that he will not, during the continuance of said contract, sell any beer in said territory to any other party than the said William Breed and agrees to give credit to the said William Breed from time to time to the extent of $1,500, in supplying him with all the beer he may require for sale, all idea of the legal relationship of principal and agent imposing a liability upon the principal for acts or want of skill, care, or diligence of the agent is repelled. The instrument clearly contemplates the sale of beer by the plaintiff to Breed, but it is not a bill of sale or a contract of sale. Analyzed, it gives about the following: The plaintiff says to Breed: " You are selling beer in a territory composed of that part of the state of Nebraska bounded on the north by the Union Pacific railroad and on the east by the cities

of Lincoln and Columbus; buy your supplies of beer for this trade of me and I will give you a monopoly of my beer in that territory and will continue to give you a credit for beer to the extent of $1,500 for beer thus sold and supplied you, you giving me a mortgage for my ultimate security. Breed accepts this proposition and gives the mortgage security. The execution of this instrument created no legal liability on the part of either of the contracting parties, unless possibly it laid the plaintiff under an obligation not to sell beer to any person other than Breed within the territory therein specified. And also, after buying beer of the plaintiff, Breed was under an obligation to sell it to his customers within the above bounded territory in preference to beer from any other brewery or manufactory. But neither this instrument nor the place of its execution did or could control or give location to the subsequent purchasers of beer by Breed from the plaintiff. Large quantities of beer were afterwards ordered by Breed from the defendant from time to time by letters written from Hastings, Nebraska, to Rock Island, Illinois, and once personally by Breed at the latter place. The beer thus ordered was shipped from the latter to the former place to Breed by the car load by a common carrier usually of his selection and designation. In one instance a car load was shipped to the address of the plaintiff but this seems to have been unauthorized by the plaintiff and the fact of its occurrence is not presented in the case in such a manner as to be of significance. The freight on the beer thus shipped was uniformly paid by Breed. It was afterwards credited back to him in his account by the plaintiff; but this was proven to have been but a method of reducing the price of the beer to conform to the standard price then in vogue. These sales of beer by the plaintiff to the defendant William Breed, upon which the indebtedness sued on arose, were made and concluded at Rock Island in the state of Illinois.

In the case of *Gillen v. Riley*, 27 Neb., 158, we, following the case of *Haug v. Gillett*, 14 Kan., 140, held that "A liquor dealer must have a license from the city or county in which his store is kept; with such license he may send out agents and take orders in any part of the state for goods to be selected and forwarded from the stock kept in such store, and is not required to obtain a license from the authorities of each city or county in which orders are made therefor by such agent."

I cite the above case as bearing somewhat upon the principles of the case at bar. But here, were it not for the evidence of the plaintiff tending to prove that during all the time of the sales by him of beer to the Breeds he had complied with all the laws of the state of Illinois, and the regulations of the city of Rock Island upon the subject of the manufacture and sale of beer, it would be unknown to this case and the court which tried it that the sale of beer, either by wholesale or retail, was the subject of regulation in the state where the sales under consideration were made. It will probably be admitted to be the law that an executory contract which contemplates the violation of the law of the place where the act or thing contemplated by the contract is to be done or performed, is void. The sale of beer contemplated by the instrument under consideration was to be made, and was made, in law and in fact, in the state of Illinois, where, so far as appears, the selling of beer, even without a license, was lawful, but where it also appears that the plaintiff had complied with all the legal regulations governing such traffic. It does not appear that the plaintiff had knowledge of any law or policy of the state of Nebraska, the violation of which was contemplated by William Breed, or of the violation by him of any such law or policy. Evidence which tended to prove such knowledge on the part of the plaintiff, and which is commented upon by counsel in defendants' brief, appears to have been stricken out of the record by order of the court pending the trial.

The defendants William and Mary Breed in their an-
swer set up as a counter-claim an indebtedness of plaintiff
to them of "$2,836.84, the same being damages sustained
by reason of plaintiff's causing to be shipped to defendant
William Breed worthless and spoiled beer which was in-
valuable and unfit for use; by reason of which defendant
William Breed's business as a vendor of beer to be fur-
nished under said contract was absolutely ruined, and he
compelled to abandon the same, to his damage in the sum of
$2,500." This defense is not presented or contended for
in the brief of defendants William and Mary Breed, nor is
there sufficient evidence in the case to sustain it. William
Breed, while on the stand as a witness in his own behalf,
testified over the objections of the plaintiff that during the
time that he was operating under said contract he received
five car loads of beer from the plaintiff that he did not realize
anything out of because the beer was spoiled; that this was
the fault of the plaintiff in not placing sufficient ice about
the beer in shipping it. He also stated that he could not
exactly state how much he was actually damaged by reason
of this bad beer, but he approximated it at about $2,800;
that he kept track of the car loads, and notified the
plaintiff.

It will be observed that the cause of action set up in the
answer was the ruin and loss of the defendant's business
by the plaintiff's causing bad and spoiled beer to be shipped
to him, while the evidence does not tend to prove the loss
or ruin of defendants' business, nor does it tend to estab-
lish the value of defendants' business if ruined or broken
up.

The claims of the defendants Newell Browning to the
amount of $530.60, Charles F. Parmele to the amount of
$1,900.75, and of Oliver & Boston to the amount of
$13.10, with their several and respective rights to liens
therefor upon the said mortgaged premises to the amount
of said sums respectively, and in the order above named,

after the liens of the plaintiff thereupon, as hereinafter stated, were proved and established.

The written instrument hereinbefore considered has been already stated to be in legal effect a mortgage. It is a mortgage for future advances. As between the parties to it, it is a mortgage to secure the entire indebtedness of the defendant William Breed to the plaintiff, as set out in the petition, to-wit, the amount of the two promissory notes plead and proved; but as between the plaintiff and the other defendants, whose liens were proven and established as above, the liens of the plaintiff, will take precedence only to the amount of $1,500, interest and costs, that being the limit fixed by the terms of the instrument upon the advances to be made. The plaintiff is, however, entitled to an additional lien for the balance of the amount of his said two notes and interest upon the proceeds of the sale of the mortgaged premises after the application of sufficient of such proceeds to pay his first lien of $1,500, and interest, and the several liens of the other defendants, as above declared. The debt and liens of the plaintiff to draw interest at eight per cent per annum, and the liens of the said defendants and cross-plaintiffs to draw interest at ten per cent per annum.

The findings and judgment of the district court are reversed, and judgment and a decree of sale for the plaintiff and against the defendants William Breed and Mary Breed, and in favor of the several defendants and cross-petitioners above named, will be entered at this court as above indicated.

JUDGMENT ACCORDINGLY.

THE other judges concur.