BENBROOK v. UNITED STATES.†

(Circuit Court of Appeals, Eighth Circuit. March 8, 1911.)

No. 3,397.

INTERNAL REVENUE (§ 40*)— RETAIL LIQUOR DEALERS—PLACE FOR SALE.

One who has paid a special tax entitling him to retail liquor at his regular place of business does not violate Rev. St. § 3242 (U. S. Comp. St. 1901, p. 2094), by delivering liquor to a customer at the latter's residence, though the sale be completed there.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 40.*]

In Error to the District Court of the United States for the Western District of Arkansas.

Charles L. Benbrook was convicted of retailing liquors without a special tax, and he brings error. Reversed and remanded.

J. Wythe Walker and Chester H. Krum (L. P. Miles, on the brief), for plaintiff in error.

John I. Worthington, U. S. Atty. (L. W. Gregg, Asst. U. S. Atty., on the brief), for the United States.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

ADAMS, Circuit Judge. On July 3, 1909, Benbrook was indicted for carrying on the business of retail liquor dealer without having paid the special tax, in violation of section 3242 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2094). He kept a drug store at Fayetteville, Ark., and part of the time within the three years preceding the finding of the indictment had a license to carry on that business, and part of that time had no such license. The proof shows conclusively that he paid the special tax entitling him to do so from July 1, 1907, to June 30, 1909, with the exception of six months, between July 1, 1908, and December 31, 1908. The proof tended to show that during this period of two years, and prior thereto, Benbrook sold whisky to divers persons in Fayetteville; but there was

a conflict as to when he sold it—whether at times when he had a license or at times when he did not have one. The proof also tended to show that at times during this period of two years one Joe Liles, a cripple living at a boarding house some distance away from the drug store, occasionally sent a messenger or a note to the drug store requesting Benbrook to bring him some whisky, and that Benbrook on several occasions took a pint of whisky to him, and received pay from him at his boarding house.

In view of this testimony, the trial court, after properly charging the jury on the main issues involved, instructed them:

"If you find the defendant, on receiving word that Joe Liles wanted medicine, or wanted whisky, on one or more occasions took from his place of business a pint of whisky, and carried it and delivered it to Joe Liles, and collected the pay therefor at Joe Liles' boarding house in another part of the town of Fayetteville, then the * * * sale was made when the whisky was delivered and the money collected; * * * and if you should so find, and further find that, when such sales occurred, defendant had not paid the special tax to sell liquor *at Joe Liles' boarding house* * * * then you should find him guilty as charged in the indictment."

Due exception was saved to this instruction, and the action of the court in giving it was assigned for error.

We think this was an erroneous exposition of the law. The court in effect held that even if defendant had paid the special tax, and was thereby licensed to sell whisky at retail at his regular place of business, yet if on one or more occasions he complied with the request of a customer, made to him at his place of business, and delivered some whisky to the customer at his residence, and if he there received pay for it, his license would not protect him, as he would then be carrying on the business, not at the place where licensed, but at the residence of his customer. It may be true, as charged by the learned District Judge, that title to the whisky did not actually pass to Liles until the delivery and payment were made at his boarding house; but this legal incident of the transaction did not change the place for carrying on the business from the drug store, where the supply was kept and where orders were received, to the boarding house.

The statute (section 3242), when read in connection with section 3239 (page 2093), which requires a retail liquor dealer to place and keep conspicuously in his establishment or place of business all stamps denoting the payment of the special tax required of him, in our opinion, contemplates that the retail liquor dealer may carry on business under one license, or by virtue of paying one special tax, only at one place, at one time. This we understand to be the ruling and practice of the Treasury Department in charge of this business. Benbrook, therefore, according to the instruction of the court, even though he might have paid the special tax and have been entitled to carry on the business of a retail liquor dealer in Fayetteville at his drug store, was required to pay as many more special taxes as he had customers, provided he took their orders for delivery and payment at their homes. According to this interpretation of the law, the large dry goods stores of our cities would be "carrying on business" at the residences of their customers, provided they took orders at their stores for goods to be delivered and paid for at the residences. The usual and accepted

meaning of these words, when applied to present methods of transacting business, would not, in our opinion, warrant such interpretation.

The instruction was not only erroneous, but it was highly prejudicial. According to it, even though the jury might have found the defendant had sold no whisky at his place of business when he did not have a license to do so, they still might have found him guilty, provided he delivered a pint or more of whisky at Liles' house pursuant to an order given at his drug store, even at a time when he had a license to carry on a retail liquor business at that store.

There are other assignments of error: but, as the case must be remanded for a new trial, we do not deem it necessary to consider them.

The judgment is reversed.