THOMPSON BELDEN & CO. et al. v. LEISY BREWING CO.

In re MOISE.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1918. Rehearing Denied May 29, 1918.)

No. 4952.

BANKRUPTCY ⏀314(3) — INTOXICATING LIQUORS ⏀147 — SALES — WHERE MADE.

Where a brewing company located in Illinois gave to the bankrupt the exclusive right to sell its beer at wholesale, the same to be delivered f. o. b. at Omaha, Neb., the sales must be deemed to have occurred in Illinois, where the brewing company was licensed, so the company was entitled to have allowed its claim against the bankrupt, based on sales made under the contract, though it was not licensed in Nebraska to sell intoxicating liquors.

Appeal from the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

In the matter of the bankruptcy of Walter Moise. The claim of

the Leisy Brewing Company was rejected by the referee, and, the order being reversed, and claim allowed on petition to review, Thompson Belden & Co. and other creditors, whose claims had been allowed, were permitted to appeal, the trustee declining. Affirmed.

F. S. Howell, of Omaha, Neb. (W. J. Connell, of Omaha, Neb., on the brief), for appellants.

Arthur F. Mullen, of Omaha, Neb. (F. A. Mulfinger, of Omaha, Neb., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The only question involved is whether, upon the undisputed facts, the appellee was entitled to have its claim against the bankrupt estate of Walter Moise allowed. The claim was rejected by the referee in bankruptcy, and on a petition to review the order of the referee was by the District Court reversed, and the claim ordered to be allowed. The trustee declining to appeal from the decision of the District Court, appellants, creditors of the bankrupt, whose claims had been allowed, were permitted to prosecute this appeal.

The facts are that the contract between the bankrupt and the appellee, a brewing company located at Peoria, in the state of Illinois, gave to the bankrupt the exclusive right to sell at wholesale its beer in certain territory, to be delivered in carload lots "f. o. b." at Omaha, Neb., at certain prices set out in the contract, and also to pay the freight on all its empty cooperage, cases and bottles, returned to it by the bankrupt, in carload lots. By a subsequent agreement the appellee agreed to furnish for the use of the bankrupt in the handling and delivery of its beer sufficient trucks and keep them in repair. The statutes of the state of Nebraska (Ann. St. 1911, § 4231 [chapter 50, § 11]) require all persons selling malt or other intoxicating liquors to procure a license and pay the tax prescribed. Any person selling them without having procured such license is guilty of a misdemeanor, and section 4231a (section 11a) provides:

"That in all cases where the purchase price for intoxicating liquors is paid to the person who makes manual delivery of any such liquors to the vendee thereof, the sale shall be held to have been made in the county where delivery and payment were made, as aforesaid."

The evidence also shows that the appellee was lawfully empowered to sell liquors at Peoria, in the state of Illinois, the place the beer was manufactured and shipped from to the bankrupt at Omaha, Neb.

The contention of the appellants is that as the beer was, under the contract between the parties, to be shipped to Omaha, the appellee to pay the freight, the sale was made there, and, appellee not having procured a license there, it cannot recover. Benbrook v. United States, 186 Fed. 153, 108 C. C. A. 265, rules this case and leads to an affirmance. The trial judge in that case had charged the jury:

"If you find the defendant, on receiving word that Joe Liles wanted medicine, or wanted whisky, on one or more occasions took from his place of

business a pint of whisky, and carried it and delivered it to Joe Liles, and collected the pay therefor at Joe Liles' boarding house in another part of the town of Fayetteville, then the * * * sale was made when the whisky was delivered and the money collected; * * * and if you should so find, and further find that, when such sales occurred, defendant had not paid the special tax to sell liquor at Joe Liles' boarding house, * * * then you should find him guilty as charged in the indictment."

The court reversed the conviction, and spoke through Judge Adams:

"According to this interpretation of the law, the large dry goods stores of our cities would be 'carrying on business' at the residences of their customers, provided they took orders at their stores for goods to be delivered and paid for at the residences. The usual and accepted meaning of these words, when applied to present methods of transacting business, would not, in our opinion, warrant such interpretation."

To the same effect are Jones v. United States, 170 Fed. 1, 95 C. C. A. 213, 24 L. R. A. (N. S.) 143; United States v. Lackey (D. C.) 120 Fed. 577; Wagner v. Breed, 29 Neb. 720, 732, 733, 46 N. W. 286; State v. Davis, 62 W. Va. 500, 60 S. E. 584, 14 L. R. A. (N. S.) 1142; Commonwealth v. Fleming, 130 Pa. 138, 18 Atl. 622, 5 L. R. A. 470, 17 Am. St. Rep. 763.

The judgment of the District Court is affirmed.