WM. JOHNSON & CO., Limited, v. JOHANSEN.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1898.)

No. 596.

1. MASTER AND SERVANT—INJURY TO SEAMAN—CONTRIBUTORY NEGLIGENCE.

Libelant, an able seaman, while painting a mast, fell to the deck and was injured. While doing the work he was seated in a boatswain's chair suspended by a line passing over a block aloft, the loose end being fastened by a toggle within his reach, and by means of which he was required to lower himself from time to time as the work proceeded. The appliances were arranged by himself. The evidence left in doubt the exact cause of the accident, but it resulted from the slipping of some of the fastenings, and not from the breaking of any of the parts. *Held*, that libelant was guilty of contributory negligence.

2. SAME—NEGLIGENCE OF BOTH MASTER AND SERVANT—DIVISION OF DAMAGES.

Libelant, a seaman, was required to go aloft and paint a mast. He was furnished with a boatswain's chair, a block, a rope, and a toggle for fastening the loose end of the line, by means of which he was required to lower himself from time to time while proceeding with the work. By reason of the slipping of the fastenings of the line the chair fell and libelant was injured. *Held* that, the vessel being in port, where no urgency existed, the master was negligent in furnishing a rope which, by reason of its newness, was so stiff as to be difficult to fasten securely with a toggle of the length supplied, and that, under the rule in admiralty requiring the division of the damages in proportion to the negligence of the master and servant respectively, libelant was entitled to recover one-half his actual damages.

3. DAMAGES FOR PERSONAL INJURY—EXCESSIVE AWARD.

Four thousand dollars is not excessive as an award covering one-half the actual damages sustained by an able seaman by reason of an injury which necessitated the amputation of one of his legs below the knee.

Appeal from the District Court of the United States for the Eastern District of Texas.

Libel by Halward Johansen, seaman, against Wm. Johnson & Company, Limited, owners of the British Steamship Edenmore, to recover for personal injuries. There was a judgment for libelant, and defendant appeals.

J. Parker Kirlin, Guy M. Horner, and W. B. Lockhart, for appellant.

John F. McLean, J. C. Walker, and J. B. Rosser, Jr., for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge. This libel was brought by the libelant, an able seaman of the crew of the British steamship Edenmore, to recover damages for personal injuries sustained through a fall from aloft to the deck of said ship, a distance of 30 feet, while the ship was lying at the wharf in the port of Galveston, Tex., in November, 1894. The Edenmore was a two-masted fore and aft rigged steamship, with two winches at the foot of the foremast, one, No. 2, about 1½ feet aft the mast, and the other about 5 or 6 feet forward. The boatswain of the vessel had ordered the libelant to go aloft and paint the foremast, and had furnished him the usual boatswain's chair, a new gantline, or rope, 1 inch in diameter, a block, and a toggle, or round wooden pin, about 1¼ inches in diameter, and somewhere from 10 to 15 inches in length. The libelant testified that he asked the boatswain to furnish a man to lower him, and the boatswain said he would not do so, he had no time, and the libelant would have to do it himself; which statement is denied by the boatswain, who testified that the libelant made no request of him for a man at the base of the mast to lower him. The libelant arranged all the gear. going aloft, and hooking a block upon the arm of the foremast, and passing the gantline through it, bending one end fast to the sling which supported the seat of the boatswain's chair, securing the other or running end of the rope to the toggle pin, which he had thrust through the knot, taking a number of turns around the toggle. The libelant then seated himself in the boatswain's chair, and, as he painted the mast, was to lower himself from time to time by slacking away on the gantline. After the libelant had painted down the mast about three feet, the toggle slipped, or was jarred loose, or the turn of the gantline around the toggle slipped off, or the bend to the slings of the boatswain's chair became loose, and the libelant fell to the deck, striking the starboard barrel of the No. 2 winch, which had just previously been running, breaking his leg and otherwise injuring himself. His leg was so badly injured that it had to be amputated below the knee, and he suffered the pain and injuries usual in such cases.

The evidence with regard to exactly how the accident happened is conflicting. The libelant himself is by no means clear on the point, and probably he did not know with any certainty. The master, chief officer of the ship, second mate, and boatswain gave evidence all tending to show that the hitch of the gantline in the slings of the chair became unbent, letting the chair fall and the gantline run through the block and also fall. The weight of all the evidence is in favor of this view of the case. If it is the correct view, the libelant, by his negligence, contributed to his own injury. Without fully adopting this view, we are of opinion that the case made is one of negligence on the part of the libelant; for an able seaman, when given a stout rope, block, and a boatswain's chair, and no emergency intervening, ought to be able to so secure himself aloft that, retaining his strength and ordinary faculties, a fall is not possible. Under the circumstances attending the business of the ship and the work given the libelant, if the toggle given him was not long enough he could have applied for and obtained another; or, if the rope was too stiff and unpliable to bind about the toggle, there are other means of securing the running end of a gantline under such circumstances.

But finding that the libelant contributed to his own injury does not dispose of this case. The common-law rules with reference to contributory negligence do not control in the admiralty. In cases of marine tort the admiralty courts, where both parties are in fault, will divide the damages as the circumstances surrounding the tort in question may require. The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29.

According to the allegations in the amended libel, it was the duty of the ship to furnish proper ropes, tackle, and other appliances, whereby libelant would be free and secure from danger while engaged in painting the mast; that the appliances furnished were a new, unpliable 2¾-inch rope, and an insufficient toggle, whereby he was compelled to fasten himself while aloft painting said mast, which he was compelled to do by reason of the master's failure in stationing a man to lower him at the base of said mast; and the injuries to the libelant were received through the gross and willful negligence on the part of the master in furnishing the libelant with a stiff and cumbersome rope, and an improper toggle, and the failure of the master to station a man at the base of said mast to lower the libelant while painting the said mast, as it was his duty so to do, and in not furnishing libelant with proper rope and tackle. Under the evidence, we do not find that the master of the ship was guilty of negligence in ordering the libelant to paint the mast without stationing or providing a man to lower the chair as the progress of the work might require, but we do find that, the ship being in port with no pressing emergency requiring instant action, the ship was bound to furnish suitable and reasonably safe appliances to the libelant to enable him to do the work ordered, and that the rope and toggle furnished in this case was unsuitable and ordinarily unsafe to be used in the manner in which the libelant was expected to use and did use them. Ordinarily, a new rope

ought not to be objected to, and it is probably true, as the proctor for the appellant urges, that many of the claims that have been brought against vessels were to recover for injuries alleged to have been received by reason of the breaking of old and defective ropes, and that this is the first case in his experience where the furnishing of a new rope is assigned as a specification of negligence on the part of the ship. At the same time, we are of opinion, from the evidence in this case, that, in combination with the toggle, the new rope furnished was too stiff and too large for the purpose intended, and so stiff that, on the short toggle furnished, the rope, by reason of its unpliability, could not be made to grip or bind hard enough to hold the toggle in place, or to hold the half hitches or turns made around the same by the running part of the gantline, and we are satisfied that this was the direct cause of the accident. It may be, as urged so strongly by the appellant, that the libelant received these appliances and proceeded to use them without objection, but, if this be so, it must be considered that on board ships a sailor is not expected to, nor, as for that matter, permitted, before executing an order, to question the propriety of the order or the sufficiency of the materials furnished. As we find both the libelant and the ship in fault, we consider it a proper case to divide the damages between the negligent parties. The libelant lost his leg below the knee, suffered much from pain in the hospital, and, instead of being an able-bodied seaman, has now become a cripple, and no doubt an inefficient landsman. The district court, without specifying whether the fault was mutual or the ship only in fault, awarded damages to the libelant in the sum of $4,000. Conceding the certain injuries suffered by the libelant, we are inclined to hold that the libelant has not recovered more than half his actual damages by the decree of the district court, and that said decree should therefore be affirmed; and it is so ordered.