## THE BERTHA F. WALKER.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

### Nos. 95–97.

COLLISION ☞74—VESSEL BREAKING FROM MOORINGS—INSUFFICIENT LINES.

Evidence *held* to sustain findings that the breaking away and consequent injury of three boats moored in Newtown creek in a summer squall was caused by being struck by another schooner, which broke from her moorings and drifted upon them, and also that the schooner was in fault for not using mooring lines of sufficient strength.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 104; Dec. Dig. ☞74.]

Appeal from the District Court of the United States for the Southern District of New York.

These causes come here upon appeal from decrees of the District Court, Southern District of New York, holding the schooner Bertha F. Walker solely in fault for a collision between herself and three other boats in Newtown creek during a heavy summer squall. The collision occurred after the schooner had broken away from her moorings. It is disputed whether or not the flotilla, consisting of the three other boats, had also broken loose before collision. The condition and sufficiency of the lines by which the schooner was made fast were also in controversy. The opinion of Judge Hand in the trial court is as follows:

There are two questions to be determined in this case: First, whether the flotilla broke away before the schooner struck them; and, second, if the schooner broke them from their moorings, whether that accident was unavoidable or was due to the faulty mooring of the Walker.

As to the first, I am satisfied with the libelant's testimony. Of the libelant's witnesses, McMann, the master of the Helen P., although directly interested, impressed me as a very honest witness. Of Turner and Campbell the less I can say the better; they were utterly discredited. Wenburg or Knee did not carry conviction. On the other hand, Clyde Glasman and Bedell, who were in a position to see—being directly opposite to the flotilla—were exceedingly good witnesses. They told as much as, and no more than, was reasonable from one in their position. It is quite impossible to reconcile their stories with anything but the fact that it was the schooner which broke the flotilla loose. The fact that they speak of the flotilla as on their right hand seems to me entirely natural. For the claimants, Maloney, Colgan, and Bosworth, apparently disinterested men, who stood in a place where they could observe, all say that the Walker did not foul the flotilla until the latter was within 230 feet of the bridge. They say that the flotilla was delayed because the Helen P.'s sprit became fouled in a house and so impeded its movement up the stream. That story is certainly not impossible, and it is corroborated by Falker, who swore that the flotilla broke loose before

the Walker. Such disputes are sometimes difficult to determine, but I must say that I do not feel that this is one.

The engine crew did not carry conviction to me, just why I should find it hard to say. Had they been uncontradicted I should have followed their story, especially when followed by Falker who made a better showing. But their testimony was not uncontradicted and Falker was an eleventh hour witness, produced after I had already indicated a decided opinion. Taking the conflict as it is and even laying out of consideration the libelant's interested witnesses, though that ought in fairness not to apply to McMann—the weight is decidedly with the libelants. It is suggested that the depositions of the crew of the Helen P. may be reconciled with the theory that the flotilla broke adrift and was fouled by the Walker after the Helen P. had impaled a house, since removed, with her sprit, I do not at all agree with any such reconcilement, for it seems to me perfectly apparent that the crew meant to say that the dredge had not moved when the Walker struck her. There is, to be sure, considerable vagueness in that testimony, but it does not serve to help me to believe the story of the engine crew, but rather, the contrary. That story seems to me to be made rather to fit into those ambiguities in the testimony of the crew of the Helen P. which was accessible before the trial. In so far as such an agreement is shown, it does not help to remove the impression which I got at the time. At least I have no trouble whatever in choosing the libelant's story upon this branch of the case.

The case therefore resolves itself into that of a moving vessel striking and fouling a moored vessel, and Mr. Goodrich quite frankly concedes that in this situation the burden is upon him to show himself free from fault. What, then, are the facts? That the Walker, although thoroughly moored so far as concerned the number of her ropes and the method of lashing, was blown adrift in a squall of no greater violence than is to be expected after a very hot and sultry day, say once a summer, or once in two summers. Such squalls are no doubt unusual, but are certainly not out of any expectation in the harbor during the summer. Hardly a season passes without damage to the smaller shipping being caused by heavy squalls, nor was the wind record abnormally high in the case of this one. This was not a case like the great storm of February 22, 1912, or that in the early days of this year when the gale rose to over 90 miles an hour. The maximum velocity was 58 miles which is very different. Besides, the schooner was not in an unusually exposed place; indeed, I think, I may say that she probably had some shelter from the buildings near at hand.

Under these circumstances, it is hardly possible to say that the accident was inevitable. It really speaks for itself. Had the vessel been properly moored, she could not have broken away under the circumstances. If I look for an explanation, it seems to me that the character of the rope shows pretty clearly what was the reason. There was presented before me both the Golden Rod's towing hawser and this rope itself. It is true that 2½ years have elapsed in the case of each since the date of the accident, but the condition to-day of each is quite different. It is very easy, merely by twisting the hawser of the Walker, to burst out its rotten strands. It is indeed true that the ropes were originally of different grades, and that there is a conflict in the testimony as to whether it is customary to employ bolt lines, such as tugs use, for fast lines in schooners. That dispute I do not feel called upon to determine, for it is quite clear that the claimant is in this position: If it be customary to employ for fasts rope of the character which he used, it is at least necessary that it should be watched, so that it may be able to withstand such strains as are within reasonable expectation. This rope was at least six or seven months old; at the present time it is rotten, and the only expert testimony on its condition at the time it was injured—testimony which is apparently disinterested—is to the effect that it was then rotten. Moreover, why, with the burden upon him, does not the claimant make some proof? Claim was made almost at once for the damage while all the evidence was at hand. Then disinterested testimony was possible, and the ropes could be saved for the trial; but not a single

piece of these lines was offered in evidence. This, in view of the nature of the issue, is certainly a very significant consideration, at least when the burden is on the claimant. In such a case the best proof of the condition of the rope is the rope itself, and the only specimen we have was and is in unfit condition. Can the claimant complain that I should judge from that piece, when all the means of correcting any error lay, and for aught we know still lie in his hands?

The usual decree of reference will therefore pass in favor of the libelant.

H. W. Goodrich, of New York City, for appellant.

Peter Alexander, of New York City, for the Golden Rod.

W. J. Martin, of New York City, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. These causes present only two questions, both wholly of fact, on testimony sharply conflicting and manifestly irreconcilable. We have carefully examined the whole testimony, and do not find in it sufficient to justify a reversal of the findings, on these two questions, of the District Judge, who saw, heard, and himself questioned the witnesses. Discussion of the evidence seems superfluous; it would contribute nothing illuminative of admiralty law or practice.

The decrees are affirmed, with interest and costs.