## THE COLON.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

### No. 96.

1. SHIPPING ⊗═══84(3)—LIABILITY OF VESSELS—INJURY TO STEVEDORES.
   A ship is liable in rem for an injury to a stevedore resulting from a dangerously defective hatch cover furnished by it to the stevedores for their use.

2. SHIPPING ⊗═══86(2)—LIABILITY OF VESSEL—INJURY TO STEVEDORE.
   A finding by the trial court that the injury of a stevedore by the falling of a hatch cover on which he stood while helping to cover the hatch at night by artificial light was due to the fact that the covers had become worn until they were too short *held* supported by the evidence.

3. EVIDENCE ⊗═══75—SHIPPING—SUIT FOR INJURY TO STEVEDORE—DEFECTIVE EQUIPMENT.
   In a suit to recover for injury to a stevedore by the falling of a hatch cover, alleged to have been too short, which was marked and measured by one of the ship's officers the next morning, the failure of respondent to produce the cover or measurements *held* to justify the inference that such evidence would have shown it to be defective.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by John Ivancich against the steamship Colon; the Panama Railroad Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 241 Fed. 592.

Richard Reid Rogers, of New York City, for appellant.

Lawrence B. Cohen, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

---

⊗═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARD, Circuit Judge. April 6, 1915, the steamer Colon was being loaded at Pier 67, North River. The stevedores had been stowing cargo in the wings of the lower hold at hatch 32, when at 9:30 p. m., they were called up by the foreman and told to put the hatch covers on the orlop deck hatch. In this hatch there were two iron strongbacks running athwartships between the coamings, and on these rested two wooden strongbacks running fore and aft. This divided the hatch into three fore and aft sections, each of which required 12 hatch covers, about 2 feet wide and 3 inches thick. The covers for the starboard section were piled on the starboard side of the hatch, of the middle section on the after end, and of the port section on the port side. There was a shoulder 1⅜ inches wide on the coamings and on each side of the wooden strongbacks, on which the ends of the covers were designed to rest, with a play of about half an inch.

The libelant and his partner took the first cover from the starboard pile, each holding one end, and placed it at the after end of the starboard section. They then took the next cover and put it in place; the libelant standing on the first cover and his partner on the deck. They proceeded in this way until they had placed the seventh cover, when the libelant, standing upon the sixth cover, turned around to go with his partner to get the eighth cover. The sixth slipped from place, and he fell into the lower hold, sustaining serious injuries. Judge Hazel found that the accident was due to the defective condition of the sixth hatch cover, by wearing at the ends, and entered a decree for the libelant.

[1] There can be no doubt of the liability of the vessel in rem, if the accident was caused by a defective hatch cover furnished to the stevedores. The Rheola (C. C.) 19 Fed. 926; The King Gruffydd. 131 Fed. 189, 65 C. C. A. 495; I. M. M. Co. v. Fleming, 151 Fed. 203, 80 C. C. A. 479.

[2] The claimant's theory, that a cover belonging to the middle section, which was narrower than the port or starboard sections, had been negligently placed by the stevedores in the pile of covers for the starboard section, is not sustained by the proofs. No. 2 hatch on the orlop deck was measured, as well as the clearances of the port, middle, and starboard sections, together with the width of the shoulders on each, and reduced to a diagram by Glasser, a city surveyor, for the libelant. Stone, the chief officer of the steamer, did the same thing for the claimant. Considering first the plan drawn by Glaser: He gives the width of the shoulders, both on the coamings and strongbacks, as 1⅜ inches. If we add the full 2⁶/₈ inches to his measurement of clearance in the middle section we get 5 feet 1½ inches, which would not cover 5 feet 1⅝ inches, his measurement of the clearance in the starboard section.

Stone's diagram would allow a middle section cover to just stay in place in the starboard section, if adjusted with the greatest care. He gives the distance between the strongbacks in the middle section as 5 feet 2 inches, and between the strongback and the coaming in the starboard section 5 feet 4 inches. If we subtract 2⁶/₈ inches, the

width of the shoulders, from the starboard section, we get a clearance of 5 feet 1¼ inches, so that, allowing a play of half an inch to the cover for the middle section, it would be 5 feet 1½ inches put in a space of 5 feet 1¼ inches. The least lateral movement would cause it to fall.

Therefore we are satisfied that the accident did not occur because a middle section cover was put in the starboard section. The cover must have fallen, as the District Judge found, because it was too short for safety, probably as the result of being worn at the ends. We suspect that when one of the stevedores, who was a foreigner, spoke of wearing at the corners, he meant ends.

[3] One of the stevedores marked the cover when it was examined the next morning. The failure of the claimant to preserve it, and to produce the measurements taken by the ship's carpenter and written down by the superintending engineer that morning, justifies the inference that the cover and the measurements, if produced, would have shown defective equipment. The Phœnix (D. C.) 34 Fed. 760, 762; The Lackawanna, 210 Fed. 262, 127 C. C. A. 80; The Bertha F. Walker, 220 Fed. 667, 136 C. C. A. 309.

The cases cited by the libelant of defective ropes and other equipment not in the actual charge of the injured party are not wholly applicable to a case like this, where he handled and placed the hatch cover said to be defective. If it was as much as an inch and a half too short, as the libelant's witnesses say, care on his part might have caused him to reject it or to chock it at both ends. Failure to do so might be regarded as negligence, which would entitle him to recover only half damages. But, as the work was being done at night, in artificial light, we are not disposed, in view of all the circumstances, to disturb the finding of the District Judge.

Decree affirmed.