### CLYDE LIGHTERAGE CO. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

#### No. 224.

Collision ⬷71(3)—Moored Vessels—Unsafe Berth.

A barge moored by her master without making soundings in a slip, with her bow to a pier, and left with no one on board, lying over the edge of a sloping bank from which she slipped at low tide, breaking her lines, and coming into collision with another moored vessel, *held* in fault for the collision.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by the Clyde Lighterage Company against the Pennsylvania Railroad Company. Decree for respondent, and libelant appeals. Reversed.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederick Pennell, both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. [1] On October 1, 1917, at 2 a. m., a collision occurred between the respondent's barge No. 420 and the libelant's steam lighter Henry C. Rowe, which, at the time, was lying at the end of the pier of the American Linoleum Manufacturing Company at Linoleumville, Staten Island.

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Rowe was tied from September 29, 1917, at about 5:30 p. m. until the time of the collision, at this mooring. The water was about 15 feet deep. She lay with her bow toward the south and her stern projecting beyond the north corner of the pier. On September 29th at about 7:45 p. m., the No. 420 was moored, bow in, stern out on the north side of the pier about 15 feet inside of the pier end. The master of the No. 420 says he made fast with a 4½-inch bow line in four parts, and a 4½-inch stern line in two parts. He did not touch his lines from the time he made fast until after the accident. At noon on Sunday September 30th he went home, returning at 7 a. m. Monday, after the accident.

At the time of the collision, apparently, there was no one on board the No. 420. She was moored at the edge of the shoal or bank, which sloped sharply into deep water near the pier end; at ebb tide she would take the ground. At the hour of collision, 2 a. m., the tide was ebb, and undoubtedly the No. 420 slipped off the bank or shoal, which consisted of a slippery blue clay, and, her lines not proving strong enough to hold her, she crashed into the stern of the Rowe, breaking the latter's side, upper deck guard, and rudder, and this gives rise to this action.

The District Judge classified the happening as an inevitable accident and found that there was no negligence proven and dismissed the libel. The collision, of course, was not due to an inevitable accident, and the respondent's advocate expressly disclaims any such contention. The Louisiana, 70 U. S. (3 Wall.) 164, 18 L. Ed. 85. The District Judge found that there was no serious dispute in regard to the actual facts. We think the proof justified the claim of the libelant that the respondent was negligent. The master of the No. 420, either without knowledge as to the bottom or without making soundings, moored his boat in an unsafe berth. The bottom, at 10 or 15 feet from the end of the pier, is described by the witnesses as a shoal with a slope something of about 5 or 8 degrees, and then from the shoal there is a perceptible drop down about 30 degrees more in a slimy blue clay. The District Judge found the barge laid over the edge of a ridge in which there was this sharp descent into the water. This is doubted, for it undoubtedly lay on the shoal and slipped off, causing the strain on the lines. The master testified that he did not know about this bottom and that he made no soundings to ascertain its condition. We think it was incumbent upon the master under the circumstances here disclosed, to have made an examination to ascertain the condition of the bottom. Daly v. N. Y. Dock Co., 254 Fed. 691, —— C. C. A. ——. If the master knew of the condition of the bottom, it would have been negligence to have moored his vessel in this unsafe berth. Again, it appears that the No. 420 was not obliged to take this berth because of unloading, for she was not to discharge the cargo there, and, in discharging her cargo, would be obliged to take a berth further from the pier end. We think the principle enunciated in Campbell v. Penn. R. Co., 85 Fed. 462, 29 C. C. A. 268, is controlling as to the facts here involved. There a collision occurred between a car float and canal boats lying in the same slip. The court said:

"They were bound, however, to exercise such care and prudence in securing her as the circumstances required and the circumstances in this case required a very high degree of care inasmuch as she had repeatedly grounded at low tide, they were chargeable with knowledge of the condition of the bottom, and, if they chose to leave her at that particular place without a watchman, were bound to secure her so that the list she might be expected to take, should there be an unusual fall of the tide, would successfully be overcome."

It is the negligence in berthing and securing the barge that constitutes the fault.

[2] It is claimed, on behalf of the appellee, that the lines were in good condition and practically new. There is a dispute as to this and as to the condition of the lines at the point where they parted. The lines were not produced, and inspection was therefore not afforded to ascertain whether they parted from strain or from being defective or insufficient. The failure to preserve the lines and produce them would justify the inference that, if produced, they would have shown the results of the strain due to the slipping of the barge as it came off the shoal. The Colon, 249 Fed. 462, 161 C. C. A. 418; The Bertha F. Walker, 220 Fed. 667, 136 C. C. A. 309.

The claim advanced by the appellee that the barge master, in leaving, was justified in relying upon the fact that the lines did not break at previous low tides, is without force. There were two low tides on Sunday. He was sleeping at the first low tide, and absent at the second low tide. But, assuming that he was not, the low tide was an occasion and opportunity for making known to him the condition of the bottom where he moored his boat. The successive shocks or blows upon the lines on the occasion of these low tides may well have worn and weakened the lines, which ultimately parted. The barge master did not look at the lines from the time of berthing his boat until after the accident. Where the issue is, as here, between the barge owner and the boat with which it has collided, failure to watch the lines may be negligent. Dailey v. Carroll, 248 Fed. 466, 160 C. C. A. 476.

We think the appellant established negligence on the part of the appellee's servants and was entitled to a decree.

Decree reversed.