### BURTON v. GREIG.

### THE VILDFUGL.

(District Court, S. D. Alabama. May 20, 1920.)

No. 1760.

1. Seamen �köö29(2)—Duty of ship and owners to keep ship and appurtenances seaworthy.

It is the duty of the ship and of her owners to employés, not only to furnish a seaworthy ship and appurtenances at the beginning of the voyage, but to exercise due diligence to keep both the ship and her appurtenances in such condition.

2. Seamen ⊶29(2)—Ship and owners not insurers of safety.

Neither the ship nor her owners are insurers of the seaworthiness of the ship or her appliances, and if they use due diligence to furnish a seaworthy ship and appliances, and either the ship or the appliances are or become unseaworthy, and this condition cannot be discovered by due diligence, neither the ship nor her owners are liable in damages to a seaman injured thereby.

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Seamen ☞29(2)—Ship not liable for death where defect not discoverable by careful examination.**

Where a steamship fireman was killed by the blowing out of a copper steam pipe, which had been in use for some years and giving satisfactory and safe service, and no latent defect or condition, which the most careful examination would show to be defective, was shown, the owner of the ship was not liable.

In Admiralty. Libel by Mrs. Hilda Burton, widow of Abraham Burton, individually and on behalf of her minor children, against Joachim Greig. Libel dismissed.

Callan, Blanchard & Viosca and M. C. Scharff, all of New Orleans, La., for libelant.

Spencer, Fenner, Gidiere & Phelps, of New Orleans, La., for claimant.

ERVIN, District Judge. This was a libel filed by Mrs. Hilda Burton to recover of Greig, as the owner of the steamship Vildfugl, for the death of her husband, Abraham Burton, about September 18, 1919, in New Orleans, La.

The facts show that the said Burton was a fireman employed on board the steamship, and that, in operating the donkey engine on said date, a copper steam pipe blew out and killed the said Burton. This pipe which blew out had been used for some time on the steamship. The section of pipe which blew out is produced and exhibited to the court for inspection.

The testimony fails to show anywhere with any certainty the cause of the pipe blowing out. No negligence on the part of any of the operatives of the steamship has been shown. The testimony of the witnesses, who examined the section of pipe which is exhibited, shows that there is no latent defect disclosed in the section of pipe which blew out, and none has been discovered by the court after careful examination of the pipe.

There is no testimony showing any weakness or defect in the pipe prior to its blowing out. Some of the witnesses, examined as experts, gave their theory as to what might possibly have caused the pipe to blow out; but there is no witness who has testified as to what did cause the pipe to blow out.

It is contended by libelant that the ship owed to her crew the duty to furnish a safe place to work and safe appliances with which to work, and for a failure to do this both the vessel and her owners are liable in damages. It is contended, on the one hand, that it is not only the duty of the ship and her owners to furnish originally a seaworthy ship and appurtenances, but also the duty to keep the ship and her appurtenances in a seaworthy condition, while, on the other hand, it is contended that this duty is performed if the ship and her appurtenances are seaworthy when the voyage begins.

[1, 2] I am satisfied that it is the duty of the ship and of her owners, not only to furnish a seaworthy ship and appurtenances at the beginning of the voyage, but to keep both the ship and her appurte-

nances in this condition. In The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, the Supreme Court says:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of a ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship."

Now, while the court here used the expression "keep in order" in reference to the appliances appurtenant to the ship, it seems to me the same rule must necessarily be applied to the ship as to the appurtenances. While this is true, I do not consider that either the ship or her owners are insurers of the seaworthiness of the ship or her appliances.

It is the duty both of the owner and of the ship to use due diligence to see that both the ship and her appliances are seaworthy, and if they have used such diligence to furnish a seaworthy ship and appliances, if either the ship or appliances are or may become unseaworthy, and this condition cannot be discovered by use of due diligence, then neither the ship nor her owners are liable in damages to the seamen.

[3] Applying the rule here stated to the instant case, we find a copper steam pipe, which has been in use for some years, and has been giving satisfactory and safe services. There is no latent defect shown in the pipe; there is no condition shown in the pipe which the most careful examination would show to be defective, and even after the pipe blew out an examination of it has failed to show any defect in the pipe, much less one which could have been discovered by the most careful examination.

A decree will therefore be entered dismissing the libel.