**THE PEJEPSCOT.**

**THE R. J. KENNELLY.**

**THE SEABOARD NO. 91.**

**No. 14213.**

District Court, E. D. New York.

Nov. 22, 1934.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Prizer, of New York City, of counsel), for libelant.

Purdy & Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for claimants.

GALSTON, District Judge.

The scow Kennelly for some months prior to July 1, 1933, but how long before May 18, 1933, does not appear from the record, was tied up at Bushey's yard. From time to time other scows were tied up alongside of her. On July 1, 1933, the boat alongside was the Seaboard No. 91.

On the evening of that day a very severe storm developed, and about 9 o'clock the captain of the Kennelly, while in his cabin, heard a crash. On looking out he found that the stern line to the pier had parted. All the lines soon parted, and suddenly both boats were adrift across the bay. They struck the end of Pier B, and the recoil with wind and weather drove them to the other side of the bay, where they hit the tug Pejepscot.

The defense is inevitable accident. Prior to the accident there were lines from stern and bow and two spring lines from the Kennelly to the dock. The eye of the bow and stern lines was on the dock, the line being doubled about the cleats on the Kennelly. The diameter of these lines was four or four and a half inches. The spring lines were three inches. Between the Seaboard No. 91 and the Kennelly were five-inch lines doubled at both ends. The boats were light. Between May 18th and July 1st, the dock lines had always held, and at times, outside of the Kennelly, there were two or three scows. No testimony was offered as to the age of the lines nor were the lines produced.

Stumpf, an independent witness, employed by Ira S. Bushey & Sons as captain of a motor tug, testified that he observed the lines on the Kennelly after bringing her back from Pier 8 to Bushey's yard after the Kennelly had broken adrift, and the lines were in good condition and in normal cir-

cumstances would have held. The bargee of the Kennelly also testified that the lines were good, but black.

The defense of inevitable accident imposes a very considerable burden; and in circumstances such as have been outlined, that burden might reasonably have included at least testimony concerning the age of the lines or the production of the lines. Failure to offer either cannot be treated otherwise than significant.

That they had held at least from some time prior to May 18th to July 1st is evidence that they served their purpose, at least during that period. But the continued use must have caused some deterioration, particularly in view of the fact that there were added strains arising out of the mooring of vessels alongside. Nelson, the bargee, who was in charge from May 18th on, changed the lines the first week of his employment, but not after that. On the evening in question, though the storm was approaching and he had at least fair warning of it, he did not tighten his lines, nor put out an extra line. In this respect his conduct compares unfavorably with those on board the Pejepscot, for the mate on that vessel tightened all the lines and ran an additional line. The lines on the Kennelly may well have been slack, though the bargee said they were all right, for they were so adjusted as to permit the Kennelly to ride on all tides.

I conclude that the defense of inevitable accident has not been sustained. See The Bertha F. Walker (C. C. A.) 220 F. 667; The Patrick A. Dee (C. C. A.) 50 F.(2d) 393.

The libelant may have a decree.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.