Frank C. MITCHELL, Plaintiff,
Appellant,

v.

TRAWLER RACER, INC., Defendant,
Appellee.

No. 5429.

United States Court of Appeals
First Circuit.

April 7, 1959.

Morris D. Katz, Boston, Mass., for appellant.

James A. Whipple, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The amended complaint in this case, filed on the law docket of the United States District Court, sought damages for personal injuries sustained by a member of the crew of the fishing vessel Racer when he lost his footing while leaving the vessel due to the presence, as claimed, of some slimy substance. Count I of the amended complaint was based upon the Jones Act (41 Stat. 1007), 46 U.S.C.A. § 688, and charged that the accident was caused by various acts of negligence on the part of the shipowner or members of the crew. Count II was "brought under the General Maritime Law for Unseaworthiness". Count III claimed $5,000 damages for the expenses of maintenance and cure. The trial judge left all three counts to the jury, which returned verdicts for the defendant on Counts I and II and for the plaintiff in the sum of $2,500 on Count III. On October 2, 1958, judgment was entered pursuant to the verdict.

Plaintiff duly took an appeal from "that portion of the Judgment entered on October 2, 1958, relating to Count II of the Plaintiff's Amended Complaint, the said Count II being based upon the unseaworthiness of the defendant's vessel." In charging the jury, over plaintiff's objection, the trial judge had treated Count II based on unseaworthiness (confessedly relating to the same accident as was covered by Count I) as requiring proof of the presence of the unseaworthy condition for a sufficient length of time, from which the inference might be drawn that defendant, or his servants, in the exercise of due care, ought to have discovered the presence of the slimy substance and removed it. In other words, as the district court put the issue of unseaworthiness to the jury, he asked them to find whether as a matter of fact there was a slimy substance on the rail of the ship, and if so "was it there for a reasonably long period of time so that a shipowner ought to have seen that it was removed?". Appellant contends that this was a misdirection of law; that damages caused by unseaworthiness are recoverable without fault, and independent of negligence; and that at the moment the slimy substance appeared on the rail, the vessel, or its equipment, became unseaworthy, with the result that there remained to be considered by the jury under Count II, assuming that the jury believed the slime was there, only the question whether this unseaworthy condition was a proximate cause of the plaintiff's injury.

At the outset, we think we ought of our own motion to take note of a pos-

sible lack of jurisdiction in the district court sitting as a court of law with a jury, not as a court of admiralty. See Louisville & Nashville R. R. Co. v. Mottley, 1908, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126. Though there was no diversity of citizenship to give jurisdiction to the district court under 28 U.S.C. § 1332, the complaint was properly filed under what had been the interpretation by this court in Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, 839, of the jurisdictional provisions of 28 U.S.C. § 1331. But our holding in that case has recently been disapproved by the Supreme Court in Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368. Therefore, no longer can it be asserted that there was an independent basis of jurisdiction under 28 U.S.C. § 1331 which would authorize the district court with jury to entertain a complaint based on unseaworthiness as provided in the general maritime law. The same might be said for Count III, for maintenance and cure, though that count is not now before us.

However, as counsel for appellant has pointed out, the district court, despite the lack of diversity of citizenship, had jurisdiction of Count I, a substantial cause of action based upon the Jones Act, so that, pursuant to the actual holding in the Romero case, that court thereby acquired a "pendent" jurisdiction of the related claims under the general maritime law growing out of the same acts.

The Supreme Court has applied the doctrine of "pendent" jurisdiction to a case where the pendent or ancillary cause of action was the creation of state law. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. The present is indeed an a fortiori case for the application of the "pendent" doctrine, for here, although the same considerations favor a consolidated action, there is no problem at all of federal-state relations, and the substantive law to be applied to Count II is federal law, that is, the general maritime law as understood and applied in the United States and as formulated, ul-timately, by the Supreme Court of the United States. Compare Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 1950, 183 F.2d 497, where the pendent claim, which the federal court had "jurisdiction" to entertain, was a state-created claim; we held there that the district court did not commit an abuse of discretion in dismissing the pendent claim without prejudice, it having dismissed the "substantial" federal claim as a matter of law, upon a preliminary motion to dismiss. In a case like the present one, even if the district court had been able to dispose of the federal claim under the Jones Act without trying any issues to the jury, dismissal of the "pendent" claim would hardly have been justified. In view of the fact that the "pendent" claim here, under Count II, is a federal maritime claim, which the district court certainly had jurisdiction to entertain and determine as a court of admiralty, the most that the district court could have done after dismissing the Jones Act count would have been to transfer the remainder of the case to the court's admiralty docket, there to be determined by the admiralty judge sitting without a jury. See Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662.

■ Where the "pendent" claim is cognizable in a court of admiralty, under the general maritime law, it may well be that the parties do not have a constitutional right to a jury trial of the issues under Count II on the law side of the docket merely because the pendent claim is joined with a claim under the Jones Act. See Romero v. International Terminal Operating Co., supra; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 415 note 1, 74 S.Ct. 202, 98 L.Ed. 143 (concurring opinion). But we do not have that question to decide in this case. The district court has not undertaken to deprive the seaman of a jury trial on the issues involved in Count II. On the contrary, the court in fact submitted to the jury the whole case, that is, the issues involved in all three counts, and entered judgment on all counts in accordance with the jury verdict, including the

two counts on which it had, on the law side, only a "pendent" jurisdiction. See Strachman v. Palmer, 1 Cir., 1949, 177 F.2d 427, 431, 12 A.L.R.2d 687. We could hardly say that this action constituted an abuse of discretion, considering the broad discretion confided to a district court in the order of trial and determination of claims over which it had an undoubted jurisdiction either direct or "pendent", even if there had been an objection made to the trial by jury (which there was not).

The very policies and advantages which dictate the consolidation of the two types of claims in one trial would seem also to dictate that separate functions of fact-finding not be allocated to the jury and to the judge. To decide the negligence claim, the jury would have to find all the facts necessary to decision on the other counts (and perhaps more). It would indeed be a most unseemly administration of justice if the facts found by the jury under Count I—the Jones Act claim—should in any respect be inconsistent with findings of fact made by the judge, on the admiralty side, in consideration of Count II. Simple economy of effort and efficient administration of justice prove the propriety of what the district court did here: submitting the whole case to the jury, and entering judgment on all counts in accordance with the jury's verdict.

For the foregoing reasons we must reach the merits of this appeal, a result, as it turns out, coinciding on the facts of this case with the result we would have reached had the district court had an independent basis of jurisdiction over Count II under 28 U.S.C. § 1331, which we had erroneously supposed to be so in Doucette v. Vincent, supra, 194 F.2d at page 839.

 Due to the peculiar nature of the seaman's calling and his generally helpless condition, he has sometimes been described as "a ward of the admiralty". Mahnich v. Southern S. S. Co., 1944, 321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561. As a result, certain rules of law have grown up in his favor as part of the "general maritime law". Thus it is unquestionably true that, when a seaman suffers injury in the service of his ship, the ship or the shipowner owes him an obligation of "maintenance and cure", whether or not his injury may have been produced by anybody's fault, short of gross or willful misconduct on the part of the seaman himself. See The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. This may be said to be a kind of judicially created Workmen's Compensation Act, with a limitation in the number of items recoverable.

When it comes to an unlimited right of indemnity, over and above "maintenance and cure", for injuries caused by breach of the shipowner's obligation to supply a seaworthy vessel, an obligation sometimes said to be based upon an implied warranty of seaworthiness (see Mahnich v. Southern S. S. Co., supra, 321 U.S. at page 101, 64 S.Ct. at page 458), cases can be found which seem to say that the liability thus imposed is a species of liability without fault, not dependent upon proof of negligence or other fault. See Mahnich v. Southern S. S. Co., supra, 321 U.S. at page 103, 64 S.Ct. at page 459; Seas Shipping Co., Inc. v. Sieracki, 1946, 328 U.S. 85, 94–95, 66 S.Ct. 872, 90 L.Ed. 1099; The H. A. Scandrett, 2 Cir., 1937, 87 F.2d 708, 710; Kulukundis v. Strand, 9 Cir., 1953, 202 F.2d 708, 710. See also Woodbury, J., in Doucette v. Vincent, supra, 194 F.2d 834, 838.

 Just how this form of statement got in the books we are not quite sure. So far as we can find, one of the first instances in which a court referred to the shipowner's obligation in respect of seaworthiness as being "absolute" or as a kind of liability without fault is the opinion by Augustus N. Hand, J., in The H. A. Scandrett, supra, 87 F.2d at page 710.[1] Judge Hand stated that he

---

[1]. In the earlier case of Sabine Towing Co., Inc. v. Brennan, 5 Cir., 1934, 72 F.2d 490, it was stated that the duty of the shipowner "as to injuries, for which the general maritime law provides recovery, is absolute. Its breach without regard to

thought this conclusion followed from what the Supreme Court had said in The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. The Court (at page 175 of 189 U.S. at page 487 of 23 S.Ct.) did make the unqualified statement, by way of dictum: "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N.Y. 211, 13 N.E. 796." We say the statement is a dictum, because it was nowhere claimed in The Osceola that an unseaworthy condition of the vessel had existed or come into being, and it may be this is the reason why the Supreme Court found it unnecessary there to discuss specifically any possible qualifications as to the basis of the shipowner's liability for unseaworthiness. The New York case referred to in the quoted language was simply one in which the shipowners were held liable for the proven negligence of the mate in failing to supply a seaman with necessary medical attendance and care. Since the shipowner has a nondelegable duty in that respect, it followed that the member of the crew to whom he had delegated the performance of the duty "stands as the agent and representative of the owners and his negligence is theirs." 107 N.Y. at page 216, 13 N.E. at page 797. In other words, although, as recognized in The Osceola, 189 U.S. at page 175, 23 S.Ct. at page 487, all the members of the crew are fellow servants and hence, under the general maritime law, prior to passage of the Jones Act, seamen could not "recover for injuries sustained through the negligence of another member of the crew beyond the expense of his main-

tenance and cure", nevertheless there may be recovery of an indemnity against the shipowner for injuries in consequence of unseaworthiness, even if that unseaworthiness may have been brought about by negligence of one of the members of the crew.

In none of the subsequent Supreme Court cases cited by Judge Hand in The H. A. Scandrett is there any considered discussion of the basis of liability for injuries resulting from unseaworthiness.

As appears above, in The Osceola the Supreme Court said that, both by English and American law, the owner is liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship. By the general maritime law as applied in England, apart from statute, it was originally held that, independent of an express contract or personal negligence by the shipowners, a seaman had no right to indemnity for injuries caused by unseaworthiness. Couch v. Steel, 3 El. & Bl. 402 (Q.B. 1854). However, by the Merchant Shipping Act of 1876, 39 & 40 Vict. c. 80, § 5, it was provided as follows:

"[T]he owner of the ship, and the master, and every agent charged with the loading of the ship, or the preparing thereof for sea, or the sending thereof to sea, shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time when the voyage commences, and to keep her in a seaworthy condition for the voyage during the same".

This statutory liability, the only basis of the indemnity by the law of England, is thus based upon a lack of due care. And it appears that the dictum in The Osceola only states the existence of a similar liability in American law.

---

negligence makes the owner liable for such losses." Notwithstanding this, the court goes on to say (at page 494): "We think it quite clear that when an owner buys an old tug, licensed coastwise, and equips it for ocean going, it is negligence to send it out without knowing something of its stability, and especially

to send it out without such tests, when as in this case its history and performance in regard to crankiness and tenderness is a matter of official record." See also the statement by McReynolds, J., in Carlisle Packing Co. v. Sandanger, 1922, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L. Ed. 927.

It is certainly true that in many of the lower court cases, some of which are cited by the Supreme Court in The Osceola, the shipowner's obligation, in respect of seaworthiness, is based upon negligence. Thus, in The Waco, D.C. E.D.Pa.1925, 3 F.2d 476, 478, it is stated: "A vessel must be in all respects seaworthy, which is equivalent of the common-law duty of providing a servant or employee with a safe place to work." If that is so, then the duty of a shipowner is only a duty of care. See Restatement (Second), Agency §§ 492, 493 (1958). In our case of Christopher v. Grueby, 1 Cir., 1930, 40 F.2d 8, liability of a shipowner for injuries resulting from a dangerous condition of unseaworthiness in the engine room was said to be based upon the negligence of the owners in failing to provide and equip a seaworthy vessel. This court said (at page 12):

> "The duty of ship owners to their seamen to see that their ship is seaworthy and her equipment in safe condition for use when she starts on a voyage is a personal one, *responsibility for which they cannot escape by delegating its performance to another.* In this respect it is like the common-law duty of a master to provide his servant a suitable place in which to work. And a seaman injured through failure to perform this duty is entitled to compensation."

In Storgard v. France & Canada S. S. Corp., 2 Cir., 1920, 263 F. 545, 547, an injury was caused to a seaman by a certain bolt, which had become worn and defective, and it was held that "the shipowners knew or ought to have known the fact". And at page 548: "Employers of seamen may not be insurers, but a much higher degree of care must be required of them than is required of * * * shore servants." In Gerrity v. The Bark Kate Cann, D.C.E.D.N.Y.1880, 2 F. 241, Benedict, D. J., held the ship liable for personal injuries caused by the insufficient and careless manner in which the ship's crew had stowed dunnage in the between-decks, thus creating an unsea-

worthy condition subjecting the members of the crew to an unsafe place to work. See the discussions in The Noddleburn, D.C.D.Or.1886, 28 F. 855; by Mr. Justice Gray in The A. Heaton, C.C.D.Mass. 1890, 43 F. 592, 593, and by Addison Brown, D. J., in The Frank and Willie, D.C.S.D.N.Y.1891, 45 F. 494, 496. See also Wm. Johnson & Co. v. Johansen, 5 Cir., 1898, 86 F. 886. See generally Tetreault, "Seamen, Seaworthiness, and the Rights of Harbor Workers," 39 Cornell L.Q. 381, 386–403 (1954). In International Mercantile Marine Co. v. Fleming, 2 Cir., 1907, 151 F. 203, 204, we find: "It is the duty of the master not only to provide suitable machinery, means and appliances to do the required work, but to use due care to keep them in repair." In Wholey v. British & Foreign S. S. Co., D.C.E.D.N.Y.1908, 158 F. 379, 380, the court said:

> "The owner of a vessel must furnish a stevedore employed upon his vessel a safe place to work, in so far as the construction of the vessel and its various parts is concerned, and the inspection and care of these parts is bound to have been such that no hidden defect (which was or should have been known to the officers of the vessel) is allowed to exist and to continue without warning to the stevedores. This, of course, does not include a latent defect that a reasonable inspection by the shipowner or his agents would not show."

■ The shipowner's duty to furnish and maintain a seaworthy vessel, including equipment and appurtenances, is commonly spoken of as a "nondelegable" duty. See Globe S. S. Co. v. Moss, 6 Cir., 1917, 245 F. 54, 55. This surely does not mean that the shipowner may not properly delegate the performance of such a duty to others; it only means that the shipowner sheds no obligations by such delegation, and that, if the duty is merely one of care, whether he delegates the duty to a servant or to an independent contractor, he must at his peril see that care is used by the person to whom he has delegated the performance of his job.

See 2 Restatement (Second), Agency, p. 435, Introductory Note (1958).

We are not under the illusion that an inconvenient controlling precedent can be brushed off merely by an historical demonstration that the precedent was based upon a misunderstanding of earlier decisions. Unfortunately, there may be something in the old saying, "Communis error facit jus." All we say is that, when an appellant urges upon us a proposition of law which we regard as startlingly opposed to principle, we are justified in pointing out that the Supreme Court decisions which seem to have adopted quite casually the rule that a shipowner's obligation to the seaman to furnish a seaworthy ship is "absolute" and in no degree dependent upon negligence, are all in cases where the unseaworthy condition of the vessel in fact existed at the outset of the voyage; none of them related to a temporary condition of unseaworthiness which had arisen without negligence during the progress of the voyage on a vessel unquestionably seaworthy when it left port.

█ It may be that in the present state of the law, as declared by controlling authority, a distinction must be made between (1) initial unseaworthiness, existing at the outset of the voyage, where perhaps we have to say that the obligation of the shipowner to furnish a seaworthy vessel is "absolute", and (2) an unseaworthy condition which arises only during the progress of the voyage, in which latter case we take it to be the law that the shipowner's obligation is merely to see that reasonable care is used under the circumstances (which may of course require a high degree of diligence) by him (through the agency of the captain, mate, or other members of the crew to whom he has delegated the obligations of management) incident to the correction of the newly arisen defect. This distinction is indeed suggested in an opinion by Harlan, C. J., in Dixon v. United States, 2 Cir., 1955, 219 F.2d 10. In the present case, there is no claim that the ship's equipment was in any respect defective at the outset of the voyage.

Therefore we do not have to decide now what the liabilities of the shipowner might be in respect of an initial condition of unseaworthiness.

According to the testimony submitted by appellant, he and other deck hands had been engaged in unloading spawn removed from the fish catch, and during the course of the operation some spawn and slime accumulated on the ship's rail. Apparently this slippery substance could not have been there very long before appellant came on deck to go ashore. Acting properly under the unquestioned custom, appellant made his way to the port side of the ship, which abutted the pier, and stepped on to the ship's rail in order to reach a ladder which was part of the pier. He grasped the ladder and was reaching for it with one foot to climb it when his other foot slipped off the rail and he fell, causing the injuries complained of.

Granting that the presence of the slippery substance at that place created a transitory condition of unseaworthiness, it seems a hard doctrine to say that the shipowner, however great his duty of care, should be liable for injuries occasioned thereby even before he, through persons acting on his behalf, had a reasonable opportunity to discover the defect and remove it. At the oral argument we asked appellant's counsel what the answer would be if a vessel, in all respects initially seaworthy, should be so buffeted in a huge storm that part of its rail, not due to any inherent defect, was washed away (a ship without a rail would certainly be unseaworthy), and if, seconds later, before anyone had had an opportunity to replace the rail, a seaman were washed overboard through this breach in the rail. Appellant's counsel, recognizing the logic of his position, was obliged to say the shipowner would be liable to the seaman in such a case for an indemnity, over and above the maintenance and cure to which he would be entitled in any event by the general maritime law. Unless and until the Supreme Court tells us that this is indeed the law, we shall continue to believe that it is not so. We associate our-

selves with the majority opinion in Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, certiorari denied 1951, 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675. See also Brabazon v. Belships Co., Ltd., 3 Cir., 1953, 202 F.2d 904, 906; Burton v. Greig, D.C.S.D.Ala.1920, 265 F. 418, affirmed 5 Cir., 1921, 271 F. 271; Adamowski v. Gulf Oil Corp., D.C.E.D.Pa.1950, 93 F.Supp. 115, affirmed 3 Cir., 1952, 197 F.2d 523; International Mercantile Marine Co. v. Fleming, supra, 2 Cir., 1907, 151 F. 203, 204.

It follows that the district judge committed no error, as alleged, in respect to his charge to the jury on Count II.

A judgment will be entered affirming the judgment of the District Court.

WOODBURY, Circuit Judge (concurring).

Since we do not have to decide the question in this case, I would refrain from expressing so strongly the view that efficient administration of justice requires submission to a jury of a claim for unseaworthiness under the general maritime law whenever jurisdiction over that claim on the law side rests upon the joinder with and pendency of that claim with a claim for negligence under the Jones Act. Perhaps in most situations when Jones Act and unseaworthiness claims are joined it would be better to have a jury pass upon both claims at once. But I would leave the district judges free in their discretion to decide the unseaworthiness claim themselves on the basis of the testimony submitted at a trial by jury of the Jones Act claim. I see no reason why a district judge cannot preside over a jury trial at law and sit in admiralty at the same time and I would leave the way open for a judge to do so if in the exercise of his sound discretion that should seem the appropriate procedure in any particular case. At least, I would not in this case indicate that he ought not do so if he saw fit.

Aside from this relatively minor matter, I heartily concur in Chief Judge Magruder's excellent and interesting analysis of the law of unseaworthiness.

I say this even though in Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, 838, I did indicate, I am afraid too casually and with too implicit reliance on authority, that liability for unseaworthiness does not depend upon a shipowner's negligence and that the owner's duty to provide a seaworthy ship is a form of absolute duty.